UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

LAS AMERICAS 74-75, INC.

    Debtor

CASE NO. 15-01527 (EAG)

CHAPTER 11

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW ALD Acquisition, LLC ("ALD"), though its undersigned counsel, and respectfully states and requests:

### I.    Introduction

At the time of the filing of Debtor's Chapter 11 petition, two cases, titled <u>ALD Acquisition, LLC v. Porfirio Guzman Robles et als.</u>, Case No. K CD2010-3910 (the "First Case") and <u>ALD Acquisition, LLC v. Las Americas 74-75, Inc. et als.</u>, Case No. K CD2012-2724 (the "Second Case"), were pending before the Court of First Instance of Puerto Rico, San Juan Section (the "Puerto Rico Court"). The First Case involves a collection of monies and execution of mortgages action against Debtor's principal shareholders and their guarantors including Debtor. The Second Case involves a collection of monies and execution of mortgages action against Debtor and its guarantors.

ALD moves this Court for an order relieving it from the automatic stay provisions of 11 U.S.C.§362(a) for the limited purpose of allowing the Puerto Rico Court to proceed with the First and Second Cases up to judgment so as to liquidate ALD's claims against Debtor.

Las Americas 74-75, Inc.                                                     Case No. 15-01527(EAG)
Motion For Modification of The Automatic Stay                                              Page 2

## II.   Jurisdiction

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C.§§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(G).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The relief requested in this Motion is predicated on 11 U.S.C. §362(d), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

## III.   Factual Background In The First Case

4.     On October 22, 2008, El Piex Puertorriqueño, Inc. (the "Piex") and Debtor's principal shareholders, Porfirio Guzmán Robles ("Mr. Guzmán) and María Magdalena Benítez Rodríguez ("Mrs. Benítez"), entered into various loan agreements with Eurobank, jointly and severally guaranteed by Debtor (collectively "Loan 1").

5.     On April 30, 2010, Eurobank was closed by State and Federal banking regulators with its assets, including Loan 1, being sold to Oriental Bank and Trust ("Oriental").

6.     On December 28, 2010, Oriental filed the First Case, for the collection of monies and execution of mortgages corresponding to Loan 1, against Mr. Guzmán, Mrs. Benítez, their conjugal partnership, the "Piex", and Debtor (collectively the "Defendants").

7.     On December 12, 2011, ALD acquired Loan 1 from Oriental.

8.     On February 6, 2012, the Puerto Rico Court ordered the substitution of ALD for Oriental in the First Case.

Las Americas 74-75, Inc.                                                    Case No. 15-01527(EAG)
Motion For Modification of The Automatic Stay                                                  Page 3

9.      On December 23, 2014[1], the Puerto Rico Court entered judgement in favor of ALD for $12,757,000.66, as of May 31, 2013, plus accumulated interest until full and total payment, penalties, legal fees, and post sentence interest at the rate of 4.25% per annum, and denying Defendants' counterclaims ("First Judgment"). (Exhibit A)

10.     On January 13, 2015, the Defendants filed a motion to reconsider the First Judgment (the "First Reconsideration").

11.     At the time of Debtor's Chapter 11 petition, the First Reconsideration was pending before the Puerto Rico Court.

12.     ALD's claim corresponding to the obligations under Loans 1 has been listed by Debtor as "contingent, unliquidated and disputed" for $12,757,000.00.

13.     On July 2, 2015, ALD filed proof of claim number 6 ("POC 6"), for $14,761,721.57 corresponding to Loan 1, with a difference of $2,004,721.57 from the scheduled amount.

IV.     Factual Background In The Second Case

14.     On June 30, 2005, Debtor entered into a loan agreement with R-G Premier Bank of Puerto Rico ("R-G"), jointly and severally guaranteed by Debtor's principal shareholders, Mr. Guzmán and Mrs. Benítez, and the Piex ("Loan 2").

15.     On June 30, 2007, Mr. Guzmán entered into a loan agreement with R-G, Debtor executing, pledging, and delivering a demand promissory note, secured by a mortgage on Debtor's real property to R-G as guarantee thereof. ("Loan 3").

---

[1] The judgment in the First Case was notified on December 29, 2014.

16.     On April 30, 2010, R-G was closed by State and Federal banking regulators with its assets, including Loans 2 and 3, being sold to Scotiabank de Puerto Rico ("Scotiabank").

17.     On March 23, 2012, ALD acquired Loans 2 and 3 from Scotiabank.

18.     On November 15, 2012, ALD filed the Second Case, for the collection of monies and execution of mortgages corresponding to Loans 2 and 3 against Debtor and its guarantors, Mr. Guzmán, Mrs. Benítez, and the Piex.

19.     On January 8, 2015[2], the Puerto Rico Court entered judgment in favor of ALD in the Second Case. ("Second Judgment"). (Exhibit B)

20.     The Second Judgment awarded ALD $2,900,000.00, plus accumulated interest until full and total payment[3], and $290,000.00 for penalties and attorney's fees as to Loan 2, and $1,100,000.00, plus accumulated interest until full and total payment[4], penalties for late payment of $5,553.70, and $110,000.00 for attorney's fees, expenses, and costs as to Loan 3.

21.     On January 26, 2015, the defendants in the Second Case filed a motion to reconsider the Second Judgment (the "Second Reconsideration").

22.     At the time of Debtor's Chapter 11 petition, the Second Reconsideration was pending before the Puerto Rico Court.

23.     ALD's claim, corresponding to the obligations under Loans 2 and 3, has been listed by Debtor as "contingent, unliquidated and disputed" for $4,824,966.96.

---

[2] The judgement in the Second Case was notified on January 9, 2015.
[3] The Second Judgment indicates that the accumulated interest on Loan 2, as of March 23, 2012, was $289,582.53.
[4] The Second Judgment indicates that the accumulated interest on Loan 3, as of March 23, 2012, was $135,384.43.

24.   On July 2, 2015, ALD filed proof of claim number 5 ("POC 5") for $3,846,110.99, corresponding to Loan 2, and proof of claim number 4 ("POC 4") for $1,494,842.67, corresponding to Loan 3, for a combined total of $5,340,953.66, for a difference of $515,986.70 from the scheduled amount.

## V.    Legal Argument

25.   ALD hereby seeks an order relieving it from the automatic stay provisions of 11 U.S.C.§362(a) for the limited purpose of allowing the Puerto Rico Court to proceed with the First and Second Cases up to final judgment in order to liquidate ALD's claims against Debtor, including the pending First and Second Reconsiderations.

26.   The Bankruptcy Code provides that "a petition for bankruptcy when filed operates as a stay of a wide range of non-bankruptcy court actions [in order to give] a breathing spell to the debtor and [to provide] creditor protection by stopping all collection efforts, all harassment, and all foreclosure actions." In re López-Soto, 764 F. 2d 23, 25 (1st Cir. 1985); Goya Foods, Inc., v. Unanue-Casal, 159 B. R. 90, 95 (D.P.R. 1993); C & A, S.E. v. P.R. Solid Waste Management Auth., 369 B.R. 87, 94 (D.P.R. 2007). Nevertheless, this stay is not absolute; it can be lifted or modified upon request and for cause shown. C & A S.E., 369 B.R. at 94; see also 11 U.S.C.A. § 362(d).

27.   Although Section 362(d)(1) includes "lack of adequate protection of an interest in property" as a "cause" to modify the automatic stay, "there are other bases for a cause finding". Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.07[3] (16th ed. 2013); In re Guzman, 513 B.R. 202, 208 (Bankr. D.P.R. 2014).

28.    "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977); In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992)

29.    Courts have often permitted, as should be in this case, litigation to be concluded in another forum, particularly if the non-bankruptcy suit involves multiple parties or is ready for trial. Collier on Bankrutpcy ¶362.07[3][a]; In re Rexene Prods. Co., 141 B.R. at 577.

30.    Several courts have considered various factors in determining whether "cause" exists to lift the automatic stay.  Among these factors are: (1) whether the relief will result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as fiduciary; (4) whether a specialized court has been established to hear the particular cause of action and that tribunal has the expertise to hear such case; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties; (7) whether litigation in another forum would prejudice the interest of other creditors and/or other interested parties; (8) whether the judgment claim arising from the foreign action is subject to equitable subordination under section 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; (10) the interest of judicial economy and the

expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; (12) the impact of the stay on the parties and (13) the balance of hurt (collectively the "Factors").  In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), Goya Foods, 159 B.R. at 95-96; C & A S.E., 369 B.R. at 95; In re Guzman, 513 at 208.

31.    The party moving for the automatic stay to be lifted needs not prove a plurality of these factors. C & A S.E., 369 B.R. at 95.  The courts will generally rely "in only a few factors... to determine that sufficient cause exists to lift the stay."  C & A S.E., 369 B.R. at 95.

32.    The factors adopted in Goya Foods, C & A, and In re Guzman, favor the lifting of the automatic stay against Debtor, limited to the conclusion of the proceedings before the Puerto Rico Court up to final judgment.

33.    At least ten of the Factors (1, 2, 4, 6, 7, 9, 10, 11, 12, and 13) are applicable to the instant case and favor the lifting of the automatic stay limited to allowing the Puerto Rico Court to issue final judgment in the First and the Second Case in that fashion, inter alia, quantifying ALD's claims against Debtor.

34.    First, in the instant case, ALD's claims were listed by Debtor as "contingent, unliquidated and disputed".  Therefore, the lifting of the automatic stay will allow the Puerto Rico Court to rule on the First and Second Reconsiderations, conclusively resolving the issue as to the amounts owed by Debtor to ALD. This consideration satisfies the first and ninth Factors.

35. Debtor scheduled ALD's claim, corresponding to Loan 1, for $12,757,000.00, while ALD's POC 6 is for $14,761,721.57, resulting in a difference of $2,004,721.57.

36. Debtor scheduled ALD's claim, corresponding to Loans 2 and 3, for $4,824,966.96, while ALD's POCs 4 and 5 total $5,340,953.66, resulting in a difference of $515,986.70.

37. Second, in the interest of judicial economy, it would be a waste of resources, to wit, time, energy and money spent in the litigation by the parties, to disregard the stage of the proceedings before the Puerto Rico Court as to the determination of the amounts owed by Debtor to ALD. This consideration satisfies the tenth Factor.

38. Third, since the lifting of the stay against Debtor is requested only for the limited purpose of allowing the Puerto Rico Court to enter final judgment in the First and Second Cases, any such judgment will not interfere with Debtor's Chapter 11 Case, its estate, or its other creditors and on the contrary will expedite the processing of Debtor's bankruptcy case. This consideration satisfies the second and seventh Factors.

39. The First and Second Cases hold Mr. Guzmán, Mrs. Benítez, and the Piex severally and jointly liable as to the amounts owed by Debtor to ALD. In order for the Puerto Rico Court to grant ALD any remedies against non-debtors Mr. Guzmán, Mrs. Benítez, and the Piex, there must be a determination as to the amounts owed to ALD. Therefore, if the stay is not lifted ALD will be hampered from obtaining complete and

non-conflicting judgments by the Puerto Rico Court.  This consideration satisfies the sixth and twelfth Factors.

40.     When balancing the possibility of any harm against Debtor's estate vis a vis the harm that ALD will face if it is precluded from effectively prosecuting the First and Second Cases, the balance clearly favors the lifting of the automatic stay more so when considering judicial economy. This consideration satisfies the thirteenth Factor.

41.     Furthermore, the Puerto Rico Court has the necessary expertise to finally adjudicate the First and Second Cases. The Puerto Rico Court's familiarity with the proceedings heavily weighs in favor of lifting the automatic stay to allow it to conclude the pending proceedings. This consideration satisfies the fourth Factor.

42.     Taking into consideration the advanced stage of the Puerto Rico Court proceedings, the lifting of the stay for the limited purposes requested in this motion will result in judicial economy and the reduction of litigation expenses with no harm accruing to Debtor or its estate. This consideration satisfies the eleventh Factor.

WHEREFORE, ALD respectfully requests that the automatic stay be lifted or modified in order to allow the Puerto Rico Court to proceed with the final adjudication of the First and Second Cases in order to have ALD's claims liquidated and be able to continue the proceedings against Mr. Guzmán, Mrs. Benítez, and the Piex.

## NOTICE

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to

Las Americas 74-75, Inc.                                                    Case No. 15-01527(EAG)
Motion For Modification of The Automatic Stay                                            Page 10

the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Office of the US Trustee, and all participants of CM/ECF in this case:

| | |
|---|---|
| CARMEN D CONDE TORRES on behalf of Debtor LAS AMERICAS 74-75 INC<br>notices@condelaw.com<br><br>CARLA FERRARI LUGO on behalf of Creditor Municipio de San Juan<br>ferrarilugo@gmail.com, cflaw.bk@gmail.com<br><br>MONSITA LECAROZ ARRIBAS<br>ustpregion21.hr.ecf@usdoj.gov | CARMEN PRISCILLA FIGUEROA-BELL on behalf of Creditor CRIM<br>cfigueroa@crimpr.net,<br>cpfbkcy@gmail.com<br><br>US TRUSTEE<br>ustpregion21.hr.ecf@usdoj.gov |

San Juan, Puerto Rico, this 13th day of July, 2015.

S/CHARLES A. CUPRILL-HERNANDEZ
USDC-PR 114312
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com