PAG. 01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

ALD ACQUISITION, LLC.
                DEMANDANTE                    CASO:K CD2010-3910
                VS.                           SALON:0602

GUZMAN ROBLES, PORFIRIO
                DEMANDADO                     COBRO DE DINERO
                                              EJECUCION DE HIPOTECA
                                              CAUSAL/DELITO

LIC. RODRIGUEZ RAMOS ALBERTO
CITIBANK TOWER PISO 12
252 AVE PONCE DE LEON
SAN JUAN,PR 00918

NOTIFICACION DE SENTENCIA

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA 23 DE DICIEMBRE DE 2014 , QUE HA SIDO DEBIDAMENTE REGISTRADA Y ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA, DE LA CUAL PUEDE ESTABLECERSE RECURSO DE APELACION, DIRIJO A USTED ESTA NOTIFICACION, HABIENDO ARCHIVADO EN LOS AUTOS DE ESTE CASO COPIA DE ELLA CON FECHA DE 29 DE DICIEMBRE DE 2014 .

FERNANDEZ PAOLI JOSE A
FERNANDEZ JUNCOS STATION
PO BOX 11750
SAN JUAN,PR 00910-1750

BLASINI GONZALEZ JUAN C
PMB 606
1353 AVE LUIS VIGOREAUX
GUAYNABO,PR 00966

VELAZQUEZ TRAVIESO AROT LEVIT
PO BOX 2080
CANOVANAS,PR 00729-2080

EN SAN JUAN, PUERTO RICO, A 29 DE DICIEMBRE DE 2014.

GRISELDA RODRIGUEZ COLLADO
SECRETARIO
POR: DENISE MARIE AMARO MACHUCA
SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

ALD ACQUISITION, LLC, antes
ORIENTAL BANK & TRUST

Demandante

v.

PORFIRIO GUZMAN ROBLES, SU
ESPOSA MARÍA MAGDALENA
BENÍTEZ RODRÍGUEZ Y LA
SOCIEDAD LEGAL DE
GANANCIALES COMPUESTA POR
AMBOS; EL PIEX
PUERTORRIQUEÑO, INC.; LAS
AMÉRICAS 74-75, INC.

Demandados

CIVIL NÚM.: KCD2010-3910 (602)

SOBRE:
COBRO DE DINERO
Y EJECUCIÓN DE HIPOTECA

SENTENCIA

Reasignado el asunto de epígrafe a este salón de sesiones 602 mediante orden administrativa del 3 de septiembre de 2014, teniendo pendiente una moción de sentencia sumaria y su oposición desde septiembre de 2012, procedemos a resolver en el día de hoy, luego de diligentemente atender este asunto y examinar con detenimiento el expediente del caso en su totalidad, sus seis legajos, a la luz de los parámetros doctrinales que rigen la adjudicación de la Sentencia Sumaria. Veamos.

I

RELACION DEL CASO

La controversia ante nuestra consideración comenzó con una demanda de cobro de dinero y ejecución de hipoteca presentada el 28 de diciembre de 2010 por Oriental Bank & Trust, sucesora en derecho de la extinta Eurobank, contra Porfirio Guzmán Robles, María Magdalena Benítez Rodríguez, la Sociedad Legal de Gananciales compuesta por ambos, El Piex Puertorriqueño, Inc. y Las Américas 74-75, Inc. (en adelante, la parte demandada). La deuda reclamada corresponde a varios préstamos garantizados con unos pagarés hipotecarios que gravan una misma propiedad inmueble de naturaleza comercial.

Surge de autos que la parte demandada fue debidamente emplazada. El 14 de marzo de 2011, la parte demandada presentó contestación a la demanda y reconoció a Oriental Bank & Trust como sucesor legal de Eurobank y como tenedor de buena fe de los préstamos adquiridos y garantizados por dicha parte demandada.

La demandante Oriental Bank & Trust presentó Demanda Enmendada el 5 de agosto de 2011, en la que detalló los préstamos objeto del presente litigio y acompañó prueba documental de la que se desprende copia de los contratos de préstamos y copia de los pagarés hipotecarios suscritos por la parte demandada.

El 6 de febrero de 2012, el Tribunal ordenó la sustitución de Oriental Bank & Trust por ALD Acquisition, LLC (en adelante, la parte demandante) como parte demandante en el presente litigio. La sustitución respondió a una venta de los créditos litigiosos en donde ALD Acquisition adquirió los préstamos y pagarés hipotecarios que garantizan la reclamación objeto de esta demanda, por la suma de $9,759,364.36.

La parte demandada expuso su contestación a la Demanda Enmendada y presentó una reconvención el 13 de marzo de 2012. En síntesis, en su contestación presentó las siguientes defensas: que los contratos de préstamo son de adhesión; que la crisis económica que atraviesa Puerto Rico fue un evento imprevisto, por lo que procede la resolución de los contratos conforme con la doctrina de *rebus sic stantibus*; sostuvo que la Federal Deposit Insurance Corporaction (FDIC) mantiene el control sobre los pagarés que garantizan la deuda reclamada en el caso del epígrafe y argumentó falta de parte indispensable y de legitimación activa porque la FDIC debe formar parte del litigio.

En cuanto a la reconvención, la parte demandada planteó que al momento de la perfección de los contratos de préstamo, la parte acreedora actuó de mala fe, violó su obligación fiduciaria y fue negligente. También expuso que la situación del mercado en Puerto Rico era conocida por el acreedor al momento de otorgarse los contratos de préstamo, por lo que la contratación estuvo viciada. Al igual que en la contestación a la demanda, la parte demandada planteó la procedencia de la doctrina de *rebus sic stantibus* y sostuvo que su consentimiento estuvo viciado. En cuanto a la codemandada

2

Benítez Rodríguez, argumentó que la reclamación expuesta en la demanda no es exigible en su contra al amparo de la Equal Credit Opportunity Act (ECOA), 15 USC sec. 1691 *et seq.*, porque se le requirió una garantía personal para garantizar el préstamo otorgado. Luego de varios trámites procesales, el 16 de agosto de 2012, ALD Acquisition contestó la reconvención de la parte demandada y en síntesis, negó las alegaciones allí expuestas.

El 21 de agosto de 2012, la parte demandante presentó una moción de sentencia sumaria parcial en cuanto a los hechos de la demanda, en la que argumentó que no es necesario someter a las partes a un juicio en su fondo toda vez que no existen controversias de hechos que impidan a este Tribunal resolver que la parte demandada tiene una deuda con la parte demandante, que no se ha pagado y que dicha deuda reclamada está vencida, es líquida y exigible. Nuevamente, dicha parte presentó copia de los contratos de préstamo y de los pagarés hipotecarios suscritos por la parte demandada, junto a otra prueba documental. Presentó además, declaración jurada de Gilberto Del Valle López, un funcionario de la parte demandante acreditando las sumas de dinero adeudadas por la parte demandada a esa fecha.

La parte demandada se opuso a la referida moción de sentencia sumaria el 10 de septiembre de 2012 y alegó la existencia de hechos en controversia que impiden la resolución sumaria de la demanda; en particular, respecto a la validez de los contratos de préstamo, el perfeccionamiento de las garantías, la existencia de vicios en el consentimiento, sobre si los contratos son de adhesión, en cuanto a la aplicación de la de doctrina de *rebus sic stantibus* y sobre la reclamación de la codemandada Benítez Rodríguez al amparo de la ley federal ECOA, *supra*. No obstante, los demandados no identificaron los hechos que entienden están en controversia ni refutaron los hechos materiales presentados por la parte demandante ni incluyeron prueba documental que controvirtiera los hechos documentados por dicha parte.

El 20 de septiembre de 2012, la parte demandante replicó a la oposición a la solicitud de sentencia sumaria. En síntesis, reiteró los argumentos expuestos en su moción de sentencia sumaria y planteó que la oposición expuesta por la parte

3

demanda no cumple con los parámetros de la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.

Posteriormente, el 14 de noviembre de 2012, la demandante ALD Acquisition presentó una solicitud de sentencia sumaria parcial en cuanto a los hechos de la reconvención incoada en su contra y sostuvo que, conforme con los hechos no controvertidos expuestos en la moción de sentencia sumaria respecto a la demanda, procede también la desestimación de la reclamación de la parte demandada.

Luego de varios trámites procesales, la parte demandante solicitó se diera por sometida su petición para que se dicte sentencia mediante el mecanismo sumario, y la parte demandada presentó una nueva moción en oposición a la moción de sentencia sumaria respecto a los hechos expuestos en la demanda en donde reiteró lo planteado en la moción de 10 de septiembre de 2012. La parte demandante replicó esta oposición y nuevamente planteó la falta de cumplimiento con la Regla 36 de las de Procedimiento Civil, *supra*. La parte demandada solicitó la notificación del balance adeudado a la parte demandante. El 3 de junio de 2013, la parte demandante informó que la deuda que tiene la parte demandada en este caso con la parte demandante asciende a la suma de $12,757,000.66 al 31 de mayo de 2013 y acompañó declaración jurada de Gilberto Del Valle López a esos fines.

El 13 de junio de 2013, ALD Acquisition presentó una moción en la que solicitó la desestimación de la reconvención por falta de jurisdicción sobre la materia ya que las alegaciones planteadas contra el banco intervenido por la FDIC, en este caso Eurobank, deben ser atendidas de forma inicial en el foro administrativo.

El 27 de febrero de 2014, la parte demandada presentó una moción informativa y de consignación de pago mediante la que depositaron en el Tribunal la cantidad de $13,732,659.89 para la liquidación del balance reclamado en la demanda que nos ocupa. Dicha parte solicitó que se acepte la consignación y se ordene la entrega de los pagarés hipotecarios para su cancelación ALD Acquisition se opuso a la moción de consignación de la parte demandada.

Luego de varios trámites procesales en el que las partes argumentaron sobre la procedencia de la consignación efectuada, el 11 de abril de 2014 la parte demandante presentó una moción en la que notificó que había advenido en conocimiento de que la parte demandada había suscrito un contrato de compraventa en relación con el inmueble hipotecado para garantizar las obligaciones objeto de este litigio, y solicitó una orden dirigida al Registrador de la Propiedad para que no se inscriba ningún documento relacionado con el inmueble objeto de este pleito.

Las partes discutieron la procedencia de la orden solicitada por la demandante respecto al Registrador de la Propiedad, y el 22 de mayo de 2014 se celebró una vista argumentativa en donde se argumentó sobre la cantidad adeudada en este caso, la procedencia de la orden al Registrador de la Propiedad y sobre la posible liberación de las garantías inmobiliarias relacionadas con los préstamos cuyo vencimiento y liquidez se alega en este pleito.

A la vista de 22 de mayo de 2014 ambas partes comparecieron con representación legal. Durante la vista, según constatado por este Tribunal al escuchar su grabación, toda vez que este asunto para esa fecha no estaba ante nuestra atención y para resolver todos los asuntos pendientes; la parte demandante afirmó que la cantidad consignada en el Tribunal cubre ampliamente la deuda reclamada en el caso de epígrafe respecto a los préstamos hipotecarios objeto de este litigio. Explicó, no obstante, que la parte demandada adeuda a la parte demandante una suma total de $20,028,421.74. Según la parte demandante, esta cantidad es la suma de las cantidades reclamadas en este pleito y en otros dos que fueron presentados en otras salas del Tribunal de Primera Instancia. En este caso la parte demandante se opone a la consignación realizada por la parte demandada ya que la misma no satisface la totalidad de la deuda que tiene dicha parte a su favor, garantizada por el bien inmueble hipotecado, la cual es la suma de las cantidades reclamadas en distintos pleitos, es decir $20,028,421.74. La parte demandante sostiene que no liberará la colateral en este caso hasta que no se pague la deuda total, a saber, la deuda reclamada en este pleito y la reclamada en los otros casos pendientes en otras salas.

5

Respecto al contrato de compraventa otorgado por la parte demandada en relación con la propiedad hipotecada, la parte demandante expresó que el único efecto de violentar las cláusulas de no enajenación es que tal acción es que el único efecto de violentar las cláusulas de no enajenación es que tal acción es que la parte demandada constituye un incumplimiento contractual. La parte demandada planteó que el remedio solicitado por la parte demandante, en referencia a la solicitud de la orden dirigida al Registrador de la Propiedad, es académico.

El 6 octubre de 2014, la parte demandante presentó moción solicitando autorización para presentar Segunda Demanda Enmendada con el propósito, en síntesis, de incluir como codemandado al nuevo adquirente de la propiedad hipotecada objeto de este litigio y solicitar la rescisión del contrato de compraventa que otorgó la parte demandada con el nuevo titular. La parte demandada se opuso en moción de 20 de octubre de 2014. Adujo en síntesis que el pago de lo adeudado se efectuó de la compraventa del bien inmueble en cuestión, que la parte demandante se niega a recibir dicho pago que se encuentra consignado en el tribunal y que la solicitud en este momento de enmienda a la demanda le puede causar perjuicio indebido. Luego de evaluar detenidamente la posición de ambas partes, el 27 de octubre de 2014, el tribunal denegó la solicitud de la parte demandante a estas alturas de los procedimientos.

El 30 de octubre de 2014, todas las partes comparecieron a una vista argumentativa y quedaron sometidos todos los asuntos pendientes en este caso.

El 5 de noviembre de 2014, la parte demandante solicitó reconsideración para enmendar la demanda y el 12 de noviembre de 2014, la parte demandada presentó su oposición reiterando su posición en este asunto. Examinada la posición de ambas partes, el 18 de diciembre de 2014, el tribunal declaró No Ha Lugar la reconsideración solicitada.

Estudiado detenidamente el expediente en su totalidad y analizado los argumentos de ambas partes, a la luz de las circunstancias particulares de este caso y del derecho vigente, este Tribunal está en posición de resolver, por entender que no

6

existe controversia sustancial de hechos que amerite la celebración de una vista en los méritos.

De conformidad con lo anterior y con la prueba documental que obra en autos, este Tribunal determina que los hechos materiales en este caso no están en controversia y formula las siguientes:

## II

## DETERMINACIONES DE HECHO

1) La parte demandante es la tenedora de los pagarés objeto de la acción de epígrafe, suscritos por la parte demandada.

2) El 4 de mayo de 2001, la codemandada El Piex Puertorriqueño, Inc. suscribió el contrato de préstamo número 400009498 con The Bank & Trust de Puerto Rico por la cantidad de $2,500,000.00. El préstamo consistía de una línea de crédito rotativa por un máximo de $2,000,000.00 y una segunda línea de crédito rotativa por la cantidad de $500,000.00.

3) El 7 de marzo de 2002, las partes suscribieron una primera enmienda a dicho contrato de préstamo en la que el banco concedió a la codemandada una línea de crédito adicional no rotativa por la cantidad de $500,000.00.

4) El 4 de abril de 2003, las partes otorgaron una segunda enmienda al referido contrato de préstamo mediante la que el banco aprobó un aumento de $500,000.00 a la primera línea de crédito rotativa.

5) El 22 de octubre de 2008, los codemandados Porfirio Guzmán Robles y María Magdalena Benítez Rodríguez suscribieron el contrato de préstamo número 400008851 con Eurobank, en el que se les concedió una facilidad de crédito por la suma máxima de $4,121,500.00.

6) En la misma fecha, los codemandados Guzmán Robles y Benítez Rodríguez suscribieron un pagaré por la suma de $4,121,500.00 a favor de Eurobank o a su orden para garantizar la deuda contraída con la institución bancaria.

7) Además, los codemandados proveyeron lo siguiente como garantía colateral del pago total del préstamo:

   a. Colaterales descritas en el contrato de prenda otorgado a favor de Eurobank.

7

b. Cualquier otro instrumento o garantía que Eurobank, a su discreción, le requiera de tiempo en tiempo.

c. Pagaré hipotecario por la suma principal de $4,380,000.00; garantizado por primera hipoteca constituida mediante la Escritura Núm. 25, otorgada el 31 de mayo de 2002 ante la Notario Ana T. Ruiz Comas.

d. La descripción de la finca hipotecada es la siguiente:

"URBAN: Industrial tract identified as lot "A" on the plan prepared by mister Héctor A. Deliz, Civil Engineer, License Number one thousand twenty-nine (1,029) dated December fifteen (15), nineteen sixty three (1963), as revised on December seventeen (17) and eighteen (18) of the same year comprising ten thousand ten square meters (10,010 sq. mt.) located in the Hato Rey Ward of San Juan, Puerto Rico, bounded on the North on seventy (70.00) meters by the tract, from which it is segregated, which will be lot "C" dash One (C–1) in the future; on the South, on seventy (70.00) meters with "B" Street of the Development; on the East, in a distance of one hundred point four (100.4) meters with "C" Street on the Development, but according to the plan filed in this office its distance is one hundred and forty three (143.00) meters; in the southeast corner of said lot, the intersection of the corner has been rounded in an arc with dedication of fifteen and one half (15½) square meters to the intersection of "B" and "C" Streets, leaving a net area of nine thousand nine hundred-ninety four and one half square meters."

e. Pagaré hipotecario por la suma principal de $3,250,000.00; garantizado por una hipoteca constituida mediante la Escritura Núm. 150, otorgada el 22 de octubre de 2008 ante el Notario Nelson W. González Rosario. La propiedad hipotecada es la descrita en el párrafo anterior.

f. Garantía ilimitada y continua otorgada por la codemandada El Plex Puertorriqueño, Inc.

g. Garantía ilimitada y continua otorgada por la codemandada Las Américas 74-75, Inc.

h. Póliza de seguro de título debidamente endosada a favor de Eurobank.

i. Cesión de arrendamientos concedida por la codemandada Las Américas 74-75, Inc., conforme al contrato titulado "Collateral Assigment of Leases" de 22 de octubre de 2008.

8

8) El 22 de octubre de 2008, la codemandada El Piex Puertorriqueño, Inc. y Eurobank suscribieron el contrato de crédito número 564014432 consistente de una línea de crédito rotativa por un máximo de $2,000,000.00.

9) El 22 de octubre de 2008, El Piex Puertorriqueño, Inc. suscribió con Eurobank el contrato de préstamo número 564014459, mediante el que obtuvo una línea de crédito rotativa por la cantidad máxima de $500,000.00.

10) Como garantía del pago de la deuda, el Piex Puertorriqueño, Inc. ofreció el siguiente colateral:

a. Garantía ilimitada e incondicional de El Piex Puertorriqueño, Inc.

b. "Security Agreement" de 22 de octubre de 2008 suscrito por el Piex Puertorriqueño.

c. Gravamen Mobiliario Sobre el Arrendamiento de la Propiedad ubicada en Hato Rey.

d. Póliza de Seguro de Título debidamente endosada a favor de The Bank & Trust de Puerto Rico.

e. Acuerdo de subordinación de propiedad de Hato Rey de 22 de octubre de 2008 suscrito por Las Americas 74-75, Inc., El Piex Puertorriqueño, Inc. y Eurobank.

11) El 23 de enero de 2009, El Piex Puertorriqueño, Inc. y Eurobank otorgaron primera enmienda al contrato de crédito, con el propósito de que las garantías ofrecidas garantizaran también todas las deudas de los demandados.

12) La codemandada Las Américas 74-75, Inc., el 22 de octubre de 2008 suscribió un acuerdo mediante el que garantizó solidariamente el pago de todas las obligaciones de los demandados con Eurobank.

13) El 30 de abril de 2010, la Oficina del Comisionado de Instituciones Financieras de Puerto Rico ordenó el cierre de operaciones de Eurobank en la Isla y designó, en esa misma fecha, a la Federal Deposit Insurance Corporation (FDIC) como síndico de los activos de Eurobank.

14) En esa misma fecha, Oriental Bank & Trust, en este caso sustituida por ALD Acquisition, LLC, luego de perfeccionarse una cesión de crédito litigioso, adquirió y

9

advino tenedor de buena fe de los préstamos objeto del presente litigio, por lo que es acreedor de todos los derechos de Eurobank.

15) La parte demandada incumplió sus obligaciones contractuales de pagar a la parte demandante los préstamos antes descritos.

16) Hasta el 31 de mayo de 2013, la suma adeudada respecto a los préstamos objeto de este litigio asciende a $12,757,000.66. Esta cantidad acumula intereses según pactados.

17) Todos los demandados son solidariamente responsables del pago de lo adeudado a la parte demandante.

18) La deuda que se reclama en este caso está vencida, es líquida y exigible.

19) Para satisfacer la totalidad de la deuda reclamada en esta demanda, la parte demandada consignó en el Tribunal la suma de $13,732,659.89.

20) La cantidad consignada en el Tribunal cubre la deuda reclamada en el caso de epígrafe.

III

CONCLUSIONES DE DERECHO

A.

La Regla 36 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite que un caso sea resuelto sumariamente, luego de que una de las partes presente una moción al tribunal, exponiendo las razones de hecho y derecho que justifican la resolución de controversias o el pleito en su totalidad de forma sumaria. El Tribunal Supremo de Puerto Rico ha establecido que el mecanismo procesal de la sentencia sumaria busca propiciar la rápida solución de aquellos litigios que no presentan controversias sustanciales de hechos, por lo que no requieren la celebración de un juicio en su fondo. Abrams Rivera v. ELA, DTOP y Otros, 178 DPR 914 (2010); Ramos Pérez v. Univisión de P.R., 178 DPR 200 (2010); Quest Diagnostic v. Mun. San Juan, 175 DPR 994 (2009); Sucn. Maldonado Ortiz v. Sucn. Maldonado Hernández, 166 DPR 154 (2005). No es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está

en disputa. *Ramos Pérez v. Univisión de P.R.*, *supra*; *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994).

No se dictará sentencia sumaria en las siguientes circunstancias: 1) cuando existen hechos materiales y esenciales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra et al.* 186 DPR 713, 757 (2012); *Nissen Holland v. Genthaller*, 172 DPR 503 (2007); *Vera Morales v. Bravo Colón*, 161 DPR 308 (2004). "[U]na controversia de hecho es suficiente para derrotar una moción de sentencia sumaria sólo cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente", *Pepsi-Cola v. Mun. Cidra et al*, *supra*, a la página 756.

En *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013), el Tribunal Supremo enfatizó la obligación que tienen las partes de cumplir con el mandato dispuesto en la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, en particular, en la obligación de cumplir con los requisitos de forma establecidos en la regla. El Tribunal Supremo resolvió que las salas de primera instancia no tendrán la obligación de considerar aquellos hechos que no han sido específicamente enumerados y que no tienen una referencia a los párrafos o las páginas de las declaraciones juradas u otra prueba donde se establecen. Tampoco tendrá la obligación de considerar cualquier otra prueba a la cual no se haya hecho referencia en una relación de hechos. En específico, *SLG Zapata-Rivera v. J.F. Montalvo*, *supra*, a la página 433, resolvió que:

"[S]i la parte contraria se aparta de las directrices expresamente consignadas en el mencionado precepto, entre las que se encuentra específicamente la obligación de aludir al número del hecho propuesto que se pretende contradecir, el tribunal podrá no tomar en consideración su intento de impugnación.

Igualmente, aunque en el proceso de considerar una solicitud de sentencia sumaria el tribunal retiene la discreción de examinar evidencia admisible que obre en los autos, pero que ha sido omitida por las partes, éste no se encuentra obligado a hacerlo. Puede, conforme al

11

mecanismo actual, obviar material que las propias partes hayan pasado por alto en sus escritos y resolver estrictamente a base de lo que haya sido presentado acatando el método procesal consignado en la nueva Regla 36.3 de Procedimiento Civil, *supra*."

La Regla 36, *supra*, dispone que se dictará sentencia sumaria si de los documentos que obran en el expediente del tribunal, incluyendo específicamente las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, y declaraciones juradas, de haberlas, se demostrase "que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse sentencia sumaria a favor de la parte promovente". Pepsi Cola v. Mun. De Cidra, 186 DPR 713, 756 (2012); Mejías Montalvo, et al. v. Carrasquillo Martínez, et al., 185 DPR 288 (2012).

El Tribunal Supremo ha definido un hecho material como aquél que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. Mejías Montalvo, et al. v. Carrasquillo Martínez, et al., *supra;* Szendrey v. Consejo de Titulares, 184 DPR 133 (2011); Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Además, una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria solo cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente. Es decir, si hay una disputa real y sustancial sobre la existencia de algún hecho material, entonces el tribunal no puede emitir una adjudicación de forma sumaria. De no existir dicha controversia, lo que resta es aplicar el derecho a los hechos establecidos, convirtiendo una vista en los méritos en innecesaria. *Id.*

De igual forma, es norma reiterada que únicamente procede dictar sentencia sumaria cuando surge de manera clara que el promovido por la solicitud no puede prevalecer bajo ningún supuesto de hechos. Esto es, que no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la evidencia, y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. E.L.A. v. Cole, 164 DPR 608 (2005); S.L.G. v. S.L.G., 150 DPR 171 (2000).

13

Una vez se presente la solicitud de sentencia sumaria y su oposición, los tribunales deberán: 1) analizar los documentos anejados a la solicitud de sentencia sumaria, los documentos incluidos en la oposición, aquellos que obren en el expediente del Tribunal, y 2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y Otros, supra; Sucn. Maldonado v. Sucn. Maldonado, 166 DPR 154 (2005).

B

En materia de obligaciones, nuestro ordenamiento jurídico dispone que "[t]oda obligación consiste en dar, hacer o no hacer alguna cosa". Artículo 1041 del Código Civil, 31 L.P.R.A. sec. 2991. Por su parte, el Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994 establece que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos." Como es sabido, el pago o el cumplimiento extingue las obligaciones. Artículo 1110 del Código Civil, 31 L.P.R.A. sec. 3151.

Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. Amador v. Conc. Igl. Univ. de Jesucristo, 150 DPR 571 (2000). Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375. Véase además, S.L.G. Irizarry v. S.L.G. García, 155 DPR 713 (2001).

C

Por su parte, la Sección 2-104 de la Ley Núm. 208-1995, mejor conocida como Ley de Transacciones Comerciales, 19 LPRA sec. 504, dispone que se considerará negociable todo instrumento escrito y firmado, que contenga una promesa u orden incondicional de pagar una suma específica de dinero, pagadero al portador o a la orden de una persona identificada, pagadero a la presentación o en fecha específica y que no contenga ninguna otra promesa u orden. Santos de García v. Banco Popular, 172 DPR 759, 769 (2007). Un documento que no incluya expresamente los requisitos

antes expuestos no puede ser considerado un instrumento negociable. Torres, Torres v. Torres, et al., 179 DPR 481, 489 (2010). Según la sección 2-104 de la Ley de Transacciones Comerciales, *supra*, el instrumento negociable puede contener un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago. Un instrumento negociable es considerado como un pagaré cuando tal instrumento constituye una promesa. Sección 2-104(e) de la Ley de Transacciones Comerciales, 19 LPRA sec. 504(e).

La Sección 2-109(b) de la Ley de Transacciones Comerciales, 19 LPRA sec. 509, establece que un instrumento es pagadero a la orden de persona cuando está: 1) a la orden de una persona identificada, o 2) a nombre de una persona identificada. Respecto a la transmisibilidad de un pagaré a la orden o a nombre de una persona identificada, el Tribunal Supremo ha resuelto que "...un pagaré a la orden queda negociado por el endoso del tenedor, y se completa con la entrega". Francisco Silva v. D.G.S.T. Two, Inc., 113 DPR 747, 748-749 (1983). "Un documento de título negociable emitido a la orden de una persona designada se negocia mediante su endoso y entrega", Sección 7-501(1) de la Ley de Transacciones Comerciales, 19 LPRA sec. 1601(1).

Por su parte, el Artículo 138 de la Ley Hipotecaria, 30 LPRA sec. 2462, que versa sobre la hipoteca constituida en garantía de títulos transferibles por endoso o pagarés, establece el procedimiento para la cancelación de estos gravámenes mediante el otorgamiento de escrituras de cancelación.

"Sin perjuicio de lo dispuesto en la sec. 2460 de este título sobre la cancelación de gravámenes posteriores, las inscripciones de hipoteca constituidas para garantizar obligaciones representadas por títulos transferibles por endoso o pagaderos al portador, cualquiera que sea la denominación que se les asigne, se cancelarán total o parcialmente mediante escritura otorgada por los tenedores legítimos de los títulos expresados. En todo caso deberá hacerse constar en la escritura la identificación de los títulos y su inutilización o reducción parcial en el acto del otorgamiento. Si todos o algunos de dichos títulos se hubiesen extraviado o hubieren sido destruidos sin los requisitos anteriores, únicamente podrán cancelarse dichas inscripciones mediante la presentación de la sentencia firme en que se declare haber quedado extinguidas las obligaciones representadas por los referidos títulos.

14

En las escrituras de cancelación de títulos transferibles por endoso será obligación del notario hacer constar que el compareciente es tenedor por endoso o que el último endoso se hizo en blanco." (Énfasis nuestro).

De acuerdo con el Tribunal Supremo, cuando el valor del crédito está representado por títulos al portador o transferibles por endoso, la vía exclusiva para liberar de gravamen a un inmueble individualizado es la cancelación total o parcial según dispuesto en la sección antes citada. Plaza del Rey, Inc. v. Registrador, 133 DPR 188 (1993); Casa Blanca Properties v. Registrador, 130 DPR 609 (1992), aclarado.

D

Por otro lado, la doctrina de *rebus sic stantibus* es un remedio de excepción, para situaciones extraordinarias en las que se impone un prudente y escrupuloso discernimiento judicial de moderación. Mun. de Ponce v. A.C. et al., 153 DPR 1, 37 (2000). En Casera Foods, Inc. v. E.L.A., 108 DPR 850, 856 (1979), el Tribunal Supremo estableció los siete requisitos que deben estar presentes para que prospere esta defensa. Estos son: 1) la ocurrencia de un hecho o situación imprevisible; 2) que se produzca una dificultad extraordinaria, una agravación de las condiciones de la prestación, de manera que resulte mucho más onerosa para el deudor, sin llegar al grado extraordinario en que se confundiría con la imposibilidad de la prestación, y que es también una cuestión de hecho sobre la que es difícil dar reglas de carácter general; 3) que el riesgo no haya sido el motivo determinante del contrato; 4) que no exista acción dolosa en ninguna de las partes; 5) que el contrato sea de tracto sucesivo o está referido a un momento futuro, de modo que tenga cierta duración; 6) que la alteración de las circunstancias sea posterior a la celebración del contrato y presente carácter de cierta permanencia; 7) que exista petición de parte interesada.

El Tribunal Supremo ha reiterado la necesidad de que estén presentes todos los requisitos para que prospere la defensa de *rebus sic stantibus*. Mun. de Ponce v. A.C. et al., *supra*; Casera Foods, Inc. v. E.L.A., *supra*.

E

En otro extremo, la Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (1989), se aprobó con el objetivo de reglamentar la industria bancaria y financiera. Con la aprobación de FIRREA, el Gobierno Federal eliminó la Federal Deposit Insurance Corporation (FDIC), 12 USC sec. 1811. Ver además, Ponce Fed. Bank v. Chubb Life Ins. Co., 155 DPR 309, 323 (2001). La FIRREA facultó a la FDIC para actuar como síndico de aquellas instituciones financieras insolventes. 12 USC sec. 1821(d)(2). Al actuar como síndico, la FDIC se convierte en sucesor de los derechos, obligaciones, créditos, poderes y activos de la institución insolvente. 12 U.S.C. sec. 1821(d)(2)(A). Además, la FDIC está facultada para transferir a otro organismo los activos y derechos adquiridos originalmente por la institución fallida. 12 USC sec. 1821(d)(2)(G). De acuerdo con el profesor Miguel R. Garay Aubán, Derecho cambiario de Estados Unidos y Puerto Rico, Editorial Revista de Derecho Puertorriqueño, Ponce, 1999, págs. 193 y 194; los derechos de la FDIC sobre los instrumentos transferidos por el banco insolvente están determinados por leyes federales que prevalecen sobre la Ley de Transacciones Comerciales, supra. Por lo que la FDIC puede adquirir el derecho de tenedor de buena fe sobre tales instrumentos mediante la transferencia. Si la FDIC cede los instrumentos a terceras personas, estas adquieren derechos de tenedor de buena fe mediante la doctrina del escudo o sombrilla.

Finalmente, la FDIC está obligada a notificar a todos los acreedores de toda institución bancaria para la que fue nombrada síndico, que deben presentar sus reclamaciones contra el banco insolvente dentro de un término de noventa (90) días, luego de la fecha de la publicación del aviso. 12 USC sec. 1821(d)(3)(B)(i). Toda acción por los actos u omisiones del banco insolvente está incluida en las reclamaciones que deben ser notificadas dentro del término antes indicado. 12 USC sec. 1821(d)(13)(D)(ii). De no presentarse la reclamación dentro del término establecido, la misma prescribe y la parte queda impedida de incoar una acción en los tribunales. 12 USC secs. 1821(d)(5)(C)(i) y (d)(13)(D).

16

IV

En el caso de epígrafe no hay controversia real ni sustancial sobre algún hecho material que requiera la celebración de una vista en los méritos. Los hechos medulares en esta causa de acción nos permiten disponer sumariamente. Estudiadas las doctrinas antes expuestas respecto a los hechos presentados ante nuestra consideración, resolvemos que en este caso procede el pago de la deuda reclamada en el pleito que nos ocupa y la cancelación parcial de la hipoteca según instruido en el Artículo 138 de la Ley Hipotecaria, *supra*. En primera instancia, no existe controversia de que la suma adeudada por la parte demandada en cuanto a los préstamos cuyo pago reclama la parte demandante en este pleito asciende a $12,757,000.66 al 31 de mayo de 2013 y que esta cantidad acumula intereses según pactados. Siendo este caso uno donde el valor del crédito está representado por títulos al portador o transferibles por endoso, procede la cancelación parcial de la hipoteca según el valor de cada uno de los pagarés que garantizan la deuda reclamada en este pleito. Mediante la liberación parcial de la hipoteca no se afectará el valor de los pagarés hipotecarios que se otorgaron en referencia a los préstamos que son objeto de litigio en otras salas del Tribunal de Primera Instancia.

Sobre la aplicabilidad de la doctrina de *rebus sic stantibus*, según invocada por la parte demandada en su contestación a la demanda, resolvemos que la misma no procede. La crisis económica que enfrenta un país no constituye un hecho imprevisible que amerite la aplicación de la doctrina. Tampoco es un hecho que causa dificultades extraordinarias a la parte que invoca la aplicación de la doctrina en este caso. Recordemos que la doctrina de *rebus sic stantibus* es un remedio de excepción, reservado para situaciones extraordinarias, cuyos siete requisitos deben estar presentes para que prospere su invocación.

En cuanto a la reconvención, toda acción por los actos u omisiones del banco insolvente, en este caso Eurobank, debe ser presentada ante la FDIC. De no presentarse la reclamación dentro del término de 90 días a partir de la publicación del aviso por la agencia federal, la acción prescribe y la parte queda impedida de incoar la

17

misma en los tribunales. Conforme con la legislación federal ya discutida, este Tribunal carece de jurisdicción para atender las alegaciones de la parte demandada relacionadas con la otorgación de los préstamos hipotecarios con Eurobank.

Al resolver según expuesto precedentemente, resulta innecesario discutir las demás alegaciones de las partes.

V

A tenor con los fundamentos que anteceden, y evaluada y analizada la totalidad de la prueba presentada, el Tribunal declara HA LUGAR la solicitud de sentencia sumaria presentada por la parte demandante ALD Acquisition, LLC. En consecuencia, el Tribunal dicta Sentencia Sumaria declarando Ha Lugar la demanda y ordena a la parte demandada a pagar a la parte demandante la cantidad adeudada en el caso de epígrafe de $12,757,000.66 al 31 de mayo de 2013; más los intereses acumulados según pactados hasta su total y completo pago; recargos y honorarios de abogados pactados y los intereses legales al 4.25% anual desde la fecha de esta sentencia.

Igualmente, el Tribunal declara Ha Lugar la moción de sentencia sumaria respecto a la reconvención presentada por la parte demandante. En su consecuencia, se desestima la reconvención presentada por la parte demandada por falta de jurisdicción sobre la materia. A tenor con lo antes resuelto, a la Moción Urgente y en Solicitud de Orden al Registrador de la Propiedad presentada por la parte demandante el 11 de abril de 2014, No Ha Lugar.

Existiendo en este caso una cantidad de dinero consignada por la parte demandada para la satisfacción del pago de lo reclamado en el asunto de epígrafe, consignación que se determina como bien hecha, y habiéndose dictado sentencia a favor de la parte demandante, este Tribunal ordena el pago de la reclamación de los fondos consignados en la secretaría de este tribunal a la parte demandante. La diferencia entre lo desembolsado a favor de la parte demandante y lo consignado originalmente, si quedara algún remanente luego de pagarse las sumas mencionadas,

18

dicho remanente deberá ser entregado a la parte demandada previa solicitud y orden del Tribunal.

Una vez saldado el balance adeudado en este caso, la parte demandante procederá a liberar la garantía hipotecaria en referencia a los préstamos pagados objeto de este litigio conforme a lo aquí resuelto.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, hoy 23 de diciembre de 2014.

LYNNETTE RIVERA RODRÍGUEZ
JUEZ SUPERIOR

Certifico

Griselda Rodríguez Collado
Secretaria Regional II

Por
DENISE M. AMARO MACHUCA
Secretaria Auxiliar del Tribunal I