PAG. 01                    ESTADO LIBRE ASOCIADO DE PUERTO RICO
                             TRIBUNAL DE PRIMERA INSTANCIA
                                   SALA DE SAN JUAN

ALD ACQUISITION LLC                              CASO:K CD2012-2724
            DEMANDANTE                           SALON:0803
                VS.
LAS AMERICAS 74-75 INC                  COBRO DE DINERO
            DEMANDADO                    EJECUCION DE HIPOTECA
                                         CAUSAL/DELITO


LIC. VIDAL FONT JEAN G
PO BOX 195168
SAN JUAN,PR 00919-5168


                       NOTIFICACION DE SENTENCIA


        EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA  EN EL CASO DE EPIGRAFE CON FECHA 08 DE ENERO DE 2015     , QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

        Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE  ESTABLECERSE  RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA
CON FECHA  DE  09 DE ENERO DE 2015     .

BLASINI GONZALEZ JUAN C
PMB 606
1353 AVE LUIS VIGOREAUX
GUAYNABO,PR 00966

ARENAS SOLIS CRISTINA
P O BOX 195168
SAN JUAN,PR 00919-5168

VELAZQUEZ TRAVIESO AROT LEVIT
PO BOX 2080
CANOVANAS,PR 00729-2080

EN SAN JUAN, PUERTO RICO, A 09 DE ENERO DE 2015.

                       GRISELDA RODRIGUEZ COLLADO
                    -----------------------------------------
                                   SECRETARIO
                    POR: CANDELARIO, ELSA MAGALY
                    -----------------------------------------
                             SECRETARIO AUXILIAR


O.A.T.704-NOTIFICACION DE SENTENCIA

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| **ALD Acquisition, LLC** | **Civil Num.: K CD2012-2724 (803)** |
| *Demandante*<br>**V.** | **Sobre:** |
| **Las Américas 74-75, Inc.; Porfirio Guzmán Robles, María Magdalena Benítez Rodríguez y El Piex Puertorriqueño, inc.** | **Cobro de Dinero; Ejecucion de Prendas y Ejecucion de Hipotecas** |
| *Demandados* | |

## SENTENCIA SUMARIA

La demanda en el caso de marras se presentó el 15 de noviembre de 2012, expidiéndose ese mismo día el emplazamiento dirigido a las partes demandadas. El 16 de noviembre de 2012, ALD Acquisitions, LLC ("ALD") diligenció los emplazamientos a los codemandados, Las Américas 74-75, Inc. (en adelante, "**Las Américas 74-75**"), El Piex Puertorriqueño, Inc. (en adelante, "**El Piex**"), y María M. Benítez Rodríguez (en adelante, "**Benítez**"). Con fecha del 30 de noviembre del 2012, ALD diligenció el emplazamiento al Sr. Porfirio Guzmán Robles (en adelante, "**Guzmán**").

Así, los Demandados (Las Américas 74-75, El Piex, Benítez y Guzmán) presentaron su Contestación a Demanda y Reconvención el 18 de abril 2013. Luego de varios trámites procesales que se describen en la presente Sentencia, ALD presentó su Solicitud de Sentencia Sumaria el 17 de mayo de 2013, como también una moción de desestimación en cuanto a la reconvención el 6 de mayo de 2013. Los Demandados, por su parte, presentaron su Moción en Oposición a Solicitud de Sentencia Sumaria el 9 de junio de 2013. En la misma no controvierten los hechos establecidos conforme a derecho. En su lugar, plantean defensas de derecho mayormente dirigidas a la institución bancaria insolvente con la cual pactaron originalmente, y solicitan descubrimiento de prueba en cuanto a dichas defensas. El 30 de julio de 2013, ALD presentó su escrito de Réplica a la Moción en Oposición presentada por los demandados y posteriormente, todas las partes presentaron escritos en apoyo de sus posiciones.

Considerados los documentos sometidos para consideración del tribunal, el tribunal encuentra probados los siguientes hechos:

Sentencia
Civil Núm. K CD2012-2724 (803)

## HECHOS PROBADOS

1. El día 30 de junio de 2005, la codemandada Las Américas 74-75 suscribió un contrato de préstamo titulado "Term Loan Agreement" (en adelante, el "**Contrato de Préstamo A**"), en virtud del cual R-G Premier Bank of Puerto Rico (en adelante, "R-G") le extendió a Las Américas 74-75 un préstamo de tipo comercial por la suma principal de $13,900,000.00 (en adelante, el "**Préstamo A**"), a ser utilizado para los propósitos y bajo los términos y condiciones establecidos en dicho contrato.

2. El Préstamo A devengaría intereses conforme a lo pactado en el aludido contrato a razón de una tasa fluctuante equivalente a cincuenta puntos base por debajo de la tasa preferencial ("prime rate") anunciada y ajustada por Citibank N.A. en Nueva York, Nueva York hasta la fecha de vencimiento, aumentando en doscientos (200) puntos base sobre la tasa de interés aplicable en caso de mora.

3. Acto seguido, como evidencia de la deuda para con R-G a tenor con el Préstamo A, el 30 de junio de 2005, la codemandada Las Américas 74-75, suscribió un pagaré titulado "Term Note" (en adelante, el "**Pagaré de Caja A**") por la suma principal de $13,900,000.00, cuyo balance de principal al presente es de a $2,900,000.00.

4. ALD es la actual tenedora del Pagaré de Caja A que evidencia la deuda bajo el Préstamo A que se reclama en esta acción de cobro de dinero y ejecución de hipoteca.

5. Como garantía del pago total y liquidación final del Préstamo A y sus intereses, manteniéndose vigentes hasta el saldo total de la deuda, los demandados proveyeron como garantía colateral del Préstamo A, entre otras, lo siguiente:

   a. Las colaterales descritas en el Contrato de Prenda titulado "Pledge and Security Agreement" (en adelante, el "**Contrato de Prenda A**") otorgado a favor de R-G.

   b. Pagaré Hipotecario por la suma principal de Dos Millones de Dólares ($2,000,000.00) (en adelante, el "**Pagaré Hipotecario A**"), garantizado por primera Hipoteca "pari-passu" constituida mediante la Escritura Número 50, otorgada el 30 de junio de 2005, ante la Notario Público Bianca A. Landrón Baralt (en adelante, la "**Hipoteca A**").

   c. Pagaré Hipotecario por la suma principal de Seiscientos Cincuenta Mil Dólares ($650,000.00) (en adelante, el "**Pagaré Hipotecario B**"),

2

Sentencia
Civil Núm. K CD2012-2724 (803)

garantizado por primera hipoteca constituida mediante la Escritura Número 3, otorgada el 26 de enero de 1988, ante el Notario Público Jorge Souss Villalobos (en adelante, la "**Hipoteca B**"), según modificada por la Escritura Número 51, otorgada el 30 de junio de 2005, ante la Notario Público Bianca A. Landrón Baralt (en adelante, la "**Modificación de Hipotecas**").

d.     Pagaré Hipotecario por la suma principal de Doscientos Cincuenta Mil Dólares ($250,000.00) (en adelante, el "**Pagaré Hipotecario C**"), garantizado por primera hipoteca constituida mediante la Escritura Número 62, otorgada el 1 de julio de 1991, ante el Notario Público Luis López Correa (en adelante, la "**Hipoteca C**"), según modificada por la Modificación de Hipotecas.

e.     La propiedad hipotecada se describe como sigue (en adelante, la "**Propiedad**"):

---"URBAN:- Industrial Tract identified as Jot C-1, on the plan prepared by Mister Héctor A. Deliz, Civil Engineer, License #1029, dated December 15, revised on December 17 and 18 of the year nineteen hundred and sixty three, comprising four thousand two hundred and seventy six square meters ten square centimeters. Bounded on the NORTH and EAST, with property of the principal tract from which it is segregated, on the SOUTH, with property of the principal tract from which it is segregated and lot A, the property of Westinghouse Electric Corporation, on the WEST, With C street of the development and with cul de sac to be dedicated to public use, which has the following geometric description, utilizing lambert coordinated of X is equal to one hundred and nine point one hundred and eighty five point fifty two and "Y", equals sixty five point nine hundred and two point forty seven from point five on the plan. North twenty six degree thirty two minutes thirty seconds West in a distance of fifty four meters fourteen centimeters. Then Easterly in an arc of six meters fifty centimeters radius then in a straight line four four meters, thence North twenty six degrees thirty two minutes thirty seconds West in a distance of thirteen meters thence North eighty seven degrees forty six minutes East in a distance of nineteen meters eighty centimeters to point three on the plan, thence South eighty degrees forty one minutes fifty seconds in a distance of forty seven meters one centimeters to point four, thence South sixty three degrees fifty one minutes thirty seconds in a distance of thirty five meters seventy one centimeters four a thence South thirty five degrees fifty nine minutes West in a distance of twenty meters fifty six centimeters to point four thence South sixty three degrees twenty seven minutes thirty seconds West in a distance of seventy meters to point five, the point of origin, on this lot there has been erected an industrial building made of structural steel with bar joints, steel roof deck, insulation and built up roof, concrete block walls, Miami windows, reinforced concrete floor with an area of twenty five thousand square feet of which three thousand are set apart for use

3

Sentencia
Civil Núm. K CD2012-2724 (803)

as office and air conditioned with a hung ceiling fluorescent lamp,
resilient floor tiles, glass jalousies bathroom facilities. The patio
around the building is paved with concrete."--------------------------------

La propiedad hipotecada consta inscrita al folio 38 del tomo 822 de Río
Piedras Norte, Sección Segunda de San Juan, propiedad número
24,040. Las hipotecas que gravan esta propiedad en garantía de los
pagarés antes mencionados constan inscritos en virtud de la Ley 216
de 27 de diciembre de 2010.

f.   Garantía personal ilimitada y continua titulada "Personal Guarantee"
suscrita por Porfirio Guzmán Robles (en adelante, la "**Garantía A**").

g.   Garantía personal ilimitada y continua titulada "Personal Guarantee"
suscrita María Magdalena Benítez Rodríguez (en adelante, la
"**Garantía B**").

h.   Garantía corporativa ilimitada y continua titulada "Corporate
Guarantee" suscrita por El Piex Puertorriqueño, Inc. (en adelante, la
"**Garantía C**").

i.   Póliza de seguro de título hipotecario a favor de ALD con relación a la
Hipoteca A (en adelante, la "**Póliza A**").

j.   Póliza de seguro de título hipotecario a favor de ALD con relación a la
Hipoteca B (en adelante, la "**Póliza B**").

k.   Póliza de seguro de título hipotecario a favor de ALD con relación a la
Hipoteca C (en adelante, la "**Póliza C**").

6. La parte demandada realizó su último pago el 28 de mayo de 2009, por lo que
incurrió en el incumplimiento de su obligación, y ALD ha declarado vencida la
totalidad de dicha deuda.

7. Hasta el 23 de marzo de 2012, la deuda asciende a la suma principal de
**$2,900,000.00**, más la cantidad de **$289,582.53** por concepto de intereses
acumulados a dicha fecha, más intereses sobre el principal adeudado al tipo
pactado hasta el total y completo pago de la deuda, más la suma pactada de
$200,000.00 por concepto de costas, gastos y honorarios de abogado.

8. Además de las partidas antes relacionadas, la parte demandada adeuda una
partida adicional de $65,000.00, según pactado, por concepto de costas, gastos

4

Sentencia
Civil Núm. K CD2012-2724 (803)

y honorarios de abogado, a razón del diez por ciento (10%) del monto del principal del Pagaré Hipotecario B.

9. Además de las partidas antes relacionadas, la parte demandada adeuda una partida adicional de $25,000.00, según pactado, por concepto de costas, gastos y honorarios de abogado, a razón del diez por ciento (10%) del monto del principal del Pagaré Hipotecario C.

10. Las obligaciones que surgen del Pagaré Hipotecario A, del Pagaré Hipotecario B y del Pagaré Hipotecario C están vencidas, son líquidas y legalmente exigibles, además de estar garantizadas por la Hipoteca A, la Hipoteca B y la Hipoteca C, respectivamente, sobre la Propiedad.

11. En cumplimiento con las disposiciones de la Ley Hipotecaria de 1979, Artículos 179 y 221 (30 L.P.R.A. 2575 y 2721), las partes pactaron en la Hipoteca A que la Propiedad tiene un valor de $2,000,000.00 y este valor servirá como oferta mínima en la primera subasta de la Hipoteca A cuya ejecución se solicita.

12. En cumplimiento con las disposiciones de la Ley Hipotecaria de 1979, Artículos 179 y 221 (30 L.P.R.A. 2575 y 2721), las partes pactaron en la Hipoteca B que la Propiedad tiene un valor de $650,000.00 y este valor servirá como oferta mínima en la primera subasta de la Hipoteca B cuya ejecución se solicita por ALD.

13. En cumplimiento con las disposiciones de la Ley Hipotecaria de 1979, Artículos 179 y 221 (30 L.P.R.A. 2575 y 2721), las partes pactaron en la Hipoteca C que la Propiedad tiene un valor de $250,000.00 y este valor servirá como oferta mínima en la primera subasta de la Hipoteca C cuya ejecución se solicita por ALD.

14. El día 30 de junio de 2007, el codemandado Guzmán suscribió un contrato de préstamo titulado "Term Loan Agreement" (en adelante, el "**Contrato de Préstamo B**"), en virtud del cual R-G le extendió a Guzmán un préstamo de tipo comercial por la suma principal de $1,100,000.00 (en adelante, el "**Préstamo B**"), a ser utilizado para los propósitos y bajo los términos y condiciones establecidos en dicho contrato. El Préstamo B devengaría intereses conforme a lo pactado en el aludido contrato a razón de una tasa fluctuante equivalente a cincuenta puntos base por debajo de la tasa preferencial ("prime rate") anunciada y ajustada por Citibank N.A. en Nueva York, Nueva York hasta la fecha de vencimiento,

5

Sentencia
Civil Núm. K CD2012-2724 (803)

aumentando en doscientos (200) puntos base sobre la tasa de interés aplicable en

caso de mora.

15. Como evidencia de la deuda para con R-G a tenor con el Préstamo B, el 30 de

julio de 2007 el codemandado Guzmán suscribió un pagaré por la suma principal

de $1,100,000.00 (en adelante, el "**Pagaré de Caja B**").

16. ALD es la actual tenedora del Pagaré de Caja B que evidencia la deuda bajo el

Préstamo B que se reclama en esta acción de cobro de dinero y ejecución de

hipoteca.

17. Como garantía del pago total y liquidación final del Préstamo B y sus intereses, los

demandados ofrecieron como garantía colateral del Préstamo B, entre otras, lo

siguiente:

   a.   Las colaterales descritas en el Contrato de Prenda titulado "Pledge and

        Security Agreement" (en adelante, el "**Contrato de Prenda B**")

        otorgado a favor de R-G.

   b.   Pagaré Hipotecario por la suma principal de Un Millones Cien Mil

        Dólares ($1,100,000.00) (en adelante, el "**Pagaré Hipotecario D**"),

        garantizado por primera hipoteca constituida mediante la Escritura

        Número 76, otorgada el 30 de julio de 2007, ante el Notario Público

        José D. Hernández Toro (en adelante, la "**Hipoteca D**").

   c.   La Hipoteca D grava la Propiedad según esta se describe en el Sección

        V(A)(4)(e) de esta Solicitud de Sentencia Sumaria.

   d.   Póliza de seguro de título hipotecario a favor de ALD con relación a la

        Hipoteca D (en adelante, la "**Póliza D**").

18. La parte demandada realizó su último pago el 30 de abril de 2009, por lo que

incurrió en el incumplimiento de su obligación, y ALD han declarado vencida la

totalidad de dicha deuda.

19. Hasta el 23 de marzo de 2012, la deuda asciende a la suma principal de

**$1,100,000.00**, más la cantidad de **$135,384.43** por concepto de intereses

acumulados a dicha fecha, más intereses sobre el principal adeudado al tipo

pactado hasta el total y completo pago de la deuda, más recargos por atraso

por la suma de **$5,553.70**.

6

Sentencia
Civil Núm. K CD2012-2724 (803)

20. Además de las partidas antes relacionadas, la parte demandada adeuda una partida adicional de $110,000.00, según pactado, por concepto de costas, gastos y honorarios de abogado, a razón del diez por ciento (10%) del monto del principal del Pagaré Hipotecario D.

21. El codemandado Guzmán adeuda a ALD las sumas antes expresadas, habiéndosele requerido el pago de las mismas sin resultado alguno a pesar de las diligencias y gestiones de cobro hechas por la parte demandante y sus predecesores.

22. Las obligaciones que surgen del Pagaré Hipotecario D están vencidas, son líquidas y legalmente exigibles, además de estar garantizadas por la Hipoteca D sobre la Propiedad.

23. En cumplimiento con las disposiciones de la Ley Hipotecaria de 1979, Artículos 179 y 221 (30 L.P.R.A. 2575 y 2721), las partes pactaron en la Hipoteca D que la Propiedad tiene un valor de $1,100,000.00 y este valor servirá como oferta mínima en la primera subasta de la Hipoteca D cuya ejecución se solicita.

## FUNDAMENTOS DE DERECHO

### A. Procedencia de la Sentencia Sumaria

Nuestro Tribunal Supremo ha resuelto que debe dictarse sentencia sumaria "en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes." PFZ Properties, Inc. v. General Accident, 136 D.P.R. 881 , 911-912 (1994), citando a Medina Morales v. Merck, Sharp & Dhome, 135 D.P.R. 716 (1994); Corp of Presiding Bishop C.J.C. v. Purcell, 117 D.P.R. 714, 720-721 (1986); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990). Además, la Sentencia Sumaria tiene el propósito de obtener un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia de hechos materiales en el litigio. SLG Zapata-Rivera v. JF Montalvo, 189 D.P.R. 414 (2013); PFZ Properties Inc. v. General Accident, supra; Revlon Realistic, Inc. v. Las Américas Trust Company, 135 D.P.R. 363 (1994); Rivera Santana v. Superior Packaging,132 D.P.R. 115 (1992); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987). También tiene como propósito garantizar una solución justa, rápida y económica de litigios que, por no presentar controversias genuinas de hechos materiales, no ameritan la celebración de un juicio en su fondo. Pilot Life Inc. Co. v. Crespo v. Martínez, 136 D.P.R. 624 (1994); Rodríguez v. Secretario de Hacienda, 135 D.P.R. 219 (1994).

Sentencia
Civil Núm. K CD2012-2724 (803)

Recientemente el Tribunal Supremo de Puerto Rico, el caso <u>Ramos Pérez v. Univisión</u>, 178 D.P.R. 200 (2010), elabora sobre qué se considera una controversia sobre un hecho material para propósitos de interpretar correctamente el alcance de la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.36:

> Además, la controversia sobre el hecho material tiene que ser real. Esto es, que una controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria, adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. P.E. Ortiz Álvarez, <u>Hacia el uso óptimo de la sentencia sumaria</u>, Año 3, Núm. 2, Rev Forum, pág. 8 (1987).

> En otras palabras, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una **controversia real y sustancial** sobre hechos relevantes y pertinentes. "If this evidence is merely colorable... or is not significantly probative... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., supra, Págs. 249-250. **Hay una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida.** Baicker McKee, <u>op cit.</u>, pág, 1084 ("the evidence before the court is of such nature that a rational fact finder could find in favor of the non-moving party"). (Énfasis suplido). *Id.* a las págs. 213-214.

Una vez presentada una moción conforme a la Regla 36.3(a) de Procedimiento Civil, *supra*, la otra parte contra quien se solicita la sentencia no puede derrotar la moción cruzándose de brazos y descansar en las alegaciones expuestas en la demanda. Dr. José A Cuevas Segarra, *Tratado de Derecho Civil, T. I, P. 608, citando* <u>Cortés Piñero v. Sucn. A. Cortés</u>, 83 D.P.R. 685 (1961).

La parte contra quien se presenta la moción de sentencia sumaria tiene la obligación de poner en controversia los hechos presentados por el promovente. Dr. José A. Cuevas Segarra, *Tratado de Derecho Civil, T. I, P. 609, citando* <u>Soto Vázquez v. Rivera</u>, 97 JTS 145. Por su parte, la Regla 36.3(C) de las de Procedimiento Civil, *supra*, dispone:

> Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede.

8

Sentencia
Civil Núm. K CD2012-2724 (803)

La nueva regla recoge lo esbozado por el Tribunal Supremo en <u>Pardo Santos v. Sucn.</u> <u>Stella</u>, 145 D.P.R. 816, 827 (1998), expresando "[p]ara derrotar una moción de sentencia sumaria, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente." *Id.* citando a *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, págs. 912913. Véase además Oriental Bank & Trust, *supra*, SLG Zapata Rivera, *supra.*

**B. Derecho de Obligaciones y Contratos**

El Código Civil de Puerto Rico establece en sus artículos 1208 y 1044, 31 L.P.R.A. secs. 3373 y 2994, lo siguiente:

> "La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes." (Artículo 1208).

> "Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor con los mismos." (Artículo 1044).

El Honorable Tribunal Supremo de Puerto Rico estableció lo siguiente:

> "Como se sabe, los pactos entre contratantes tienen fuerza de ley y deben cumplirse al tenor de los mismos. Código Civil, Artículo 1044, 31 LPRA 2994. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Código Civil, Artículo 1207; 31 LPRA 3372. Los Tribunales de Justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno". <u>García vs. World Wide Entertainment, Co.</u>, 132 D.P.R. 378, 384 (1992).

(Véase además <u>Hidalgo Marrero vs. Departamento de Servicios Sociales</u>, 129 D.P.R. 605 (1991) y <u>Cervecería Corona vs. Commonwealth Ins. Co.</u>, 115 D.P.R. 345 (1984).

Las obligaciones nacen para cumplirse. Para que el obligado quede liberado deberá realizar el hecho u observar la conducta esperada por el acreedor conforme lo dispone la obligación. Hay incumplimiento de la obligación cuando las legítimas pretensiones del acreedor quedan frustradas porque el deudor falló en actuar conforme a como la obligación requería que lo hiciera; ver José Ramón Vélez Torres, <u>Curso de Derecho Civil</u>, Tomo IV, Vol. I. <u>Derecho de Obligaciones</u>, 1981, pág. 235-236.

Sentencia
Civil Núm. K CD2012-2724 (803)

Ver además, Florensán y Trublard vs. Guánica Centrale, 10 D.P.R. 197 (1906);

Casalduc vs. Compañía Trasantlántica de Hamburgo, 9 D.P.R. 350 (1905); Córdova vs.

Banco Español de PR, 8 D.P.R. 542 (1905).

El Tribunal Supremo de Puerto Rico expresó:

> "Los contratos se perfeccionan por el mero consentimiento, y
> desde ese momento cada una de las partes viene obligada, no
> sólo a cumplir con lo expresamente pactado, sino también con
> las consecuencias que, según su naturaleza, sean conformes a
> la buena fe, al uso y a la ley". Unisys de PR, Inc. vs. Ramallo
> Brothers Printing, Inc., 128 D.P.R. 842, 852 (1991).

Sobre este extremo el Tribunal Supremo ha resuelto que nadie puede ir contra sus

propios actos, pues los pactos, derechos y obligaciones deben cumplirse sin excusa ni

pretexto alguno, ya que su validez y cumplimiento no pueden dejarse al arbitrio de una de

las partes. Banco Territorial y Agrícola vs. Tenedores de Cédulas Hipotecarias, 9 D.P.R.

1, 7 (1905).

Las acciones derivadas de contratos tienen por objeto que se cumplan las

promesas contractuales sobre las que las partes otorgaron su consentimiento. Véase

Ocasio Juarbe vs. Eastern Air Lines, Inc., 125 D.P.R. 410 (1990).

Tan pronto como las respectivas pretensiones de las partes coinciden al extremo

de poderse afirmar que se ha creado una relación contractual obligatoria, surgen unas

consecuencias o efectos generales que afectan, desde entonces, la libertad de acción de

las partes; ver José Ramón Vélez Torres, Curso de Derecho Civil, Tomo IV, Derecho de

Contratos, Revista Jurídica de la Universidad Interamericana 1990, pág. 99.

El profesor Vélez Torres señala, además:

> "Los contratos, pues, tienen fuerza de obligar; tienen que ser
> cumplidos (pacta sunt servanda). Esta máxima jurídica trae su
> origen del Derecho de la Edad Media y encuentra su máxima
> expresión en el artículo 1230, 31 LPRA 3451, que dispone que
> los contratos serán obligatorios siempre que en ellos concurran
> las condiciones esenciales para su validez". Vélez Torres, op
> cit, pág. 100.

En otras palabras, este principio de que los contratos nacen para cumplirse (pacta

sunt servanda) le impone a las partes contratantes la fidelidad en el cumplimiento de las

obligaciones contraídas. Tan pronto nace la relación contractual obligatoria, las partes

quedan sujetas al fiel cumplimiento de las obligaciones que asumieron al contratar y si su

conducta no se orienta hacia ese fin, el ordenamiento jurídico provee los remedios para

10

Sentencia
Civil Núm. K CD2012-2724 (803)

atender dicho incumplimiento. Tales remedios pueden ir desde el cumplimiento específico de lo pactado hasta la indemnización por los daños y perjuicios que el incumplimiento conlleve. Así el Artículo 1054 del Código Civil, 31 L.P.R.A. 3818 dispone que los que en el incumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, quedan sujetos a la indemnización de los daños y perjuicios causados.

En su obra Derecho Civil, Tomo III, Derecho de Obligaciones, 1970, a la página 11, nos dice Albaladejo:

> "La obligación significa el vínculo jurídico que liga a dos personas en virtud del cual una de ellas queda sujeta a realizar una prestación a favor de otra, para la satisfacción de un interés de éste, digno de protección; y a éste (acreedor) le compete un correspondiente poder para pretender tal prestación".

Conforme a la doctrina antes citada, la parte demandada viene obligada al cumplimiento de los términos de las obligaciones suscritas, asumiendo asimismo las consecuencias que su incumplimiento conlleva, incluyendo el pago de las sumas principales adeudadas, de los intereses, los cargos por demora que se adeuden y de los que se devenguen hasta su total y completo pago, al pago de las sumas por concepto de seguros y contribuciones y demás gastos, así como de los honorarios de abogado según pactado. Decidir de otra manera sería ir en contra de los pactos, términos y condiciones legalmente aceptados y contraídos por la parte demandada con la parte demandante. No existe justificación válida en las alegaciones responsivas, defensas afirmativas, ni escrito alguno presentado por la parte demandada que le exima del cumplimiento de lo acordado en los documentos suscritos.

El Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471, establece que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se tomará el sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquella".

Con relación a las normas sobre interpretación, el Tribunal Supremo ha reiterado que cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; Trinidad García vs. Chade, 153 D.P.R. 280 (2001). Esta norma es aplicable a todo tipo de contrato, incluso los denominados "de adhesión", aquellos en que

11

Sentencia
Civil Núm. K CD2012-2724 (803)

una parte tiene la fuerza económica, redacta los términos del contrato y la otra los acepta o no, limitando el consentimiento de la otra parte. El hecho de que una parte redacte un contrato y de que el mismo pueda tener la cualidad de ser un contrato de adhesión, la misma de por si no lo invalida o lo hace ineficaz. Banco v. Pagán, 111 D.P.R. 1 (1981); Cooperativa v. Castillo, 107 D.P.R. 405 (1978) y Franceschini v. Texaco, 103 D.P.R. 759 (1975). Sobre estos contratos es de igual aplicación la normativa referente a la aplicación de las disposiciones sobre la interpretación de los contratos contenida en el Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471, previamente citado, el cual establece que si los términos de un contrato son claros y expresan la intención de las partes contratantes, se estará al sentido literal de las cláusulas sin recurrir a reglas de interpretación y los tribunales deben imponer el sentido literal, máxime cuando los contratos son escritos. Fernández v. Municipio de Bayamón, 942 F. Supp. 89 (1996), National City Bank v. Martínez Llonin, 41 D.P.R. 163 (1930). Véase, además, Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193 (2006).

En virtud de los Artículos 111 y 1123 del Código Civil, 31 L.P.RA. secs. 3161 y 3173, rige en nuestra jurisdicción el principio de la integridad de la prestación, José Ramón Vélez Torres, Curso de Derecho Civil: Derecho de Obligaciones, Vol. 1, Tomo IV, San Juan, Puerto Rico (1981), p.133-124, Según dicho Artículo 111, supra "[n]o se entenderá pagada una deuda sino cuando completamente se hubiese entregado la cosa o hecho la prestación en que la obligación consistía".

Por su parte, dispone el Artículo 1123 que "[a] menos que el contrato expresamente lo autorice, no podrá compelerse al acreedor a recibir parcialmente las prestaciones en que consista la obligación."

Cuando expresamente se pacta que una obligación es de carácter solidaria, cada uno de los deudores que concurren a la obligación viene obligado a prestar la cosa objeto de la obligación íntegramente, independientemente de que el deudor solitario se beneficie personalmente del préstamo o no. Artículo 1090 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3101, Mansiones P. Gardens v. Scotiabank, 114 D.P.R. 513 (1983).

De surgir un incumplimiento de una obligación solidaria al acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos ellos simultáneamente. Las reclamaciones entabladas contra uno no será obstáculo para las que posteriormente se

12

Sentencia
Civil Núm. K CD2012-2724 (803)

dirijan contra los demás mientras no resulte cobrada la deuda por completo. Artículo 1097 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3108, Marrero v. Olmeda, 69 D.P.R. 217 (1948). En el caso de autos, los demandados suscribieron unos documentos que en su contenido expresan claramente que todos son deudores solidarios en cuanto a las cantidades reclamadas en el caso de epígrafe por la parte demandante.

El Tribunal Supremo de Puerto Rico resolvió en Ramos de Szendrey v. Colón Figueroa y otros, 153 D.P.R. 534 (2001), que una deuda es líquida cuando la cuantía de dinero debida es cierta y determinada, *Id.* por lo que a tenor con los hechos incontrovertidos y el derecho aplicable, las cantidades adeudadas solidariamente por los Demandados a ALD constituyen una deuda vencida, líquida y legalmente exigible que no ha sido satisfecha al día de hoy.

Estando las obligaciones que surgen del Pagaré vencidas, y siendo líquidas y legalmente exigibles, precede que de conformidad con la Regla 36 de Procedimiento Civil, *supra*, y a la jurisprudencia antes citada, se dicte Sentencia a favor del Demandante y en contra de los Demandados.

C. **Procede dictar sentencia sumaria a favor de ALD**

ALD presentó su escrito de Sentencia Sumaria mediante la cual acompañó prueba documental evidenciando que los Demandados incumplieron con su obligación solidaria de pago. Por su parte, los Demandados presentaron su escrito de oposición sin refutar los hechos materiales esbozados por ALD conforme a la Regla 36(C) de Procedimiento Civil, *supra*. En la Oposición presentada por los Demandados, no se incluye prueba documental o afidávits que contradigan o pongan en controversia los hechos documentados por ALD. A la fecha de hoy, los Demandados aún no han presentado documento alguno que ponga en controversia los hechos establecidos por ALD. De tal manera, los Demandados no descargaron su obligación de oponerse a la Solicitud de Sentencia Sumaria de ALD.

Los hechos materiales que no están controvertidos demuestran ALD tiene la potestad de cobrar la suma principal adeudada al momento del incumplimiento, y los intereses acumulados y no cobrados hasta el día en que se pague la obligación en su totalidad.

Sentencia
Civil Núm. K CD2012-2724 (803)

En cuanto al Préstamo A, hasta el 23 de marzo de 2012, la deuda asciende a la suma principal de **$2,900,000.00**, más la cantidad de **$289,582.53** por concepto de intereses acumulados a dicha fecha, más intereses sobre el principal adeudado al tipo pactado hasta el total y completo pago de la deuda, más la suma pactada de $200,000.00 por concepto de costas, gastos y honorarios de abogado.

En cuanto al Préstamo B, hasta el 23 de marzo de 2012, la deuda asciende a la suma principal de **$1,100,000.00**, más la cantidad de $135,384.43 por concepto de intereses acumulados a dicha fecha, más intereses sobre el principal adeudado al tipo pactado hasta el total y completo pago de la deuda, más recargos por atraso por la suma de $5,553.70, más la cantidad de **$110,000.00** estipulada para costas, gastos y honorarios de abogado.

**No proceden las alegaciones de la Reconvención de los Demandados**

De inicio, este Tribunal determina que no tiene jurisdicción para atender la reconvención presentada por los Demandados a base de las disposiciones del Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (en adelante, "FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989). En particular, la Regla 10.8 (c) de Procedimiento Civil establece que "[s]iempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el caso."

FIRREA requiere que toda reclamación basada en los actos u omisiones de una institución financiera acogida a sindicatura por el Federal Deposit Insurance Corporation (en adelante, el "FDIC") tendrá que ser tramitada por el proceso administrativo del FDIC. En particular, FIRREA dispone lo siguiente: "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over . . . any claim relating to any act or omission of such institution or the Corporation as receiver." 18 U.S.C. § 1821(c)(13)(D)(ii). A tenor con dicha disposición sólo el FDIC tiene jurisdicción sobre la materia para atender cualquier reclamación en contra de una institución financiera acogida a sindicatura por el FDIC.

En Acosta-Ramírez v. Banco Popular de Puerto Rico, 712 F.3d 14 (1st Cir. 2013) (en adelante, "Acosta-Ramírez") la Corte de Apelaciones del Primer Circuito (en adelante,

14

Sentencia
Civil Núm. K CD2012-2724 (803)

la "Corte de Apelaciones"), dictaminó, consistente con las disposiciones de FIRREA, que

ningún tribunal tiene jurisdicción sobre reclamaciones basadas en los actos u omisiones

de una institución financiera acogida a sindicatura por el FDIC. El 30 de abril de 2010, la

Oficina del Comisionado de Instituciones Financieras cerró a Westernbank y nombró al

FDIC como síndico de Westernbank. En igual fecha el FDIC y Banco Popular otorgaron

un Purchase and Assumption Agreement mediante el cual Banco Popular adquirió todos

los depósitos y ciertos activos de Westernbank. En Acosta-Ramírez, empleados de

Westernbank Puerto Rico (en adelante, "Westernbank") radicaron un pleito en contra del

Banco Popular de Puerto Rico (en adelante, "Banco Popular") solicitando indemnización

por despido. No obstante las disposiciones claras de FIRREA, los demandantes no

presentaron su reclamación ante el FDIC. Por todo lo cual, la Corte de Apelaciones validó

la determinación de instancia mediante la cual se desestimó el pleito en contra del Banco

Popular, como sucesor del Westernbank, dado que ningún tribunal tenía jurisdicción sobre

dicho pleito hasta tanto los demandantes agotaran los recursos administrativos

disponibles ante el FDIC.

Las circunstancias particulares del caso de Acosta-Ramírez y las disposiciones de

FIRREA aplican de igual forma al caso de epígrafe. El 30 de abril de 2010, la Oficina del

Comisionado de Instituciones Financieras cerró a R&G Premier Bank de Puerto Rico (en

adelante, "R&G") y nombró al FDIC como síndico de R&G. En igual fecha el FDIC y

Scotiabank de Puerto Rico (en adelante, "Scotiabank") otorgaron un Purchase and

Assumption Agreement mediante el cual Scotiabank adquirió todos los depósitos y ciertos

activos de R&G, incluyendo, sin limitar, las facilidades de crédito objeto de la Demanda

entablada bajo el caso de epígrafe.

Las alegaciones de los Demandados en la Reconvención están dirigidas a la

responsabilidad de R&G ante los Demandados por los actos u omisiones de R&G, una

institución financiera acogida a sindicatura por el FDIC. Estas incluyen, entre otras,

alegaciones de mala fe, dolo y maquinaciones insidiosas.

Conforme a las disposiciones de FIRREA y la decisión de la Corte de Apelaciones

en Acosta-Ramírez, este Tribunal carece de jurisdicción sobre la materia hasta tanto los

demandados agoten todos los remedios administrativos ante el FDIC. **No obstante, y a**

Sentencia
Civil Núm. K CD2012-2724 (803)

**pesar de que carecemos de jurisdicción, las alegaciones de la reconvención**

**tampoco proceden en sus méritos.**

A su vez, procede tornar la atención a las alegaciones de los Demandados según

esbozados en su Reconvención. Contrario a lo que alegan los Demandados en su

Reconvención, la doctrina de *Rebus Sic Stantibus* no es de aplicación al caso de autos. A

pesar de que los contratos son ley entre las partes, nuestro ordenamiento provee una

excepción para la aplicación de las condiciones de un contrato cuando las situaciones

ajenas al mismo tornan el cumplimiento estricto del contrato en una labor indebidamente

onerosa. La doctrina de *Rebus Sic Stantibus* provee para la resolución o revisión judicial de

los contratos por cambios en las circunstancias, la revisión de aquellos contratos de tracto

sucesivo por acontecimientos imprevistos ocurridos con posterioridad a la conclusión del

mismo, y que haga el cumplimiento extremadamente oneroso para una parte. Como una

condición implícita en la contratación, esta doctrina parte del supuesto que los contratos de

tracto sucesivo o de cumplimiento aplazado obligan mientras no ocurran cambios

importantes en el estado de hechos contemplado por las partes al momento de contratar.

Oriental Bank & Trust v. Perapi, S.E., 2014 TSPR 133; BPPR v. Sucn. Talavera, 174 D.P.R.

686, 694-695 (2008); Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 855 (1979).

La misma aplica a aquellas circunstancias en que el desequilibrio entre las

prestaciones producido por cambios extraordinarios e imprevisibles que ocurren con

posterioridad a la celebración del contrato, llegan a dimensiones de mala fe, lo que hiere el

principio de la voluntariedad y hace el cumplimiento de la obligación excesivamente oneroso

para una de las partes contratantes. Véase Oriental Bank & Trust, *supra*; BPPR v. Sucn.

Talavera, *supra*.

Por ende, aunque los contratos deben ser interpretados de forma tal que

salvaguarden la intención de las partes y se proteja su naturaleza, la doctrina general del

derecho conocido como *Rebus Sic Stantibus,* concede facultad a los tribunales para

intervenir con la obligación contractual que de ella se derive. No obstante, la intervención

judicial con un contrato válidamente pactado únicamente se justifica cuando ocurran

circunstancias especiales, extraordinarias e **imprevisibles** que lesionan la buena fe

Sentencia
Civil Núm. K CD2012-2724 (803)

contractual. Así, se puede dejar sin efecto el negocio jurídico o adaptar el mismo a las nuevas circunstancias sobrevenidas. Casera Foods, Inc. v. E.L.A., *supra*, a la pág. 855.

Para aplicar la doctrina de *Rebus Sic Stantibus* se requiere la concurrencia de los siguientes requisitos: (1) la existencia de un factor de imprevisibilidad, que implica una cuestión de hecho que depende de las condiciones que concurran en cada caso; (2) que ocurra una dificultad extraordinaria o una agravación de las condiciones de la prestación, de forma tal que resulta mucho más oneroso para el deudor, sin llegar al grado extraordinario en que se confunda con la imposibilidad de la prestación, lo cual también es una cuestión de hecho sobre la que es difícil dar reglas de carácter general; (3) que el riesgo no haya sido el motivo determinante del contrato, como ocurre en los contratos aleatorios; (4) que no exista una actuación dolosa de ninguna de las partes, puesto que los supuestos delitos y cuasi delitos están especialmente predeterminados por ley; (5) que el contrato sea de tracto sucesivo o se refiera a un momento futuro, de forma que tenga cierta duración, toda vez que no existe problema con aquellos contratos de ejecución instantánea o aquellos que ya hayan sido ejecutados; (6) que la alteración de las circunstancias ocurra con posterioridad a la celebración del contrato, siendo este factor una exigencia práctica de lo que constituiría un acontecimiento **imprevisible**, y presente carácter de cierta permanencia; y (7) que exista una petición de parte interesada. Casera Foods, Inc. v. E.L.A., *supra*, a la pág. 856.

Está establecido que la crisis económica actual no puede servir como fundamento para aplicar la doctrina de *rebus sic stantibus*. Oriental Bank & Trust v. Perapi S.E., *supra*. Además, como bien señala la demandante ALD, los documentos de préstamo en este caso fueron otorgados en 2008 y 2009, en plena crisis económica. No puede alegarse pues, que los demandados desconocían de los riesgos inherentes que existían en la economía para el 2008 y 2009.

En fin, no es de aplicación a este caso la moderación permitida por la doctrina de *rebus sic stantibus*, alegada en la Reconvención.

Los Demandados alegan en su Reconvención, que ALD incumplió con el Artículo 194 de la Ley Hipotecaria, 30 L.P.R.A. sec.2613, y por tal razón, debe declararse nula dicha cesión.

Sentencia
Civil Núm. K CD2012-2724 (803)

El Artículo 194 requiere que las cesiones de crédito hipotecario, con algunas

excepciones, sean notificadas al deudor de forma notarial. Específicamente, dicho artículo

dispone que:

> Del contrato de cesión de crédito hipotecario, subhipoteca o cualquier otra
> forma de enajenación del crédito, se dará conocimiento al deudor o titular de la
> finca si fuese distinto, en forma notarial a menos que se estuviera en el caso
> de la Sec. 2614. La notificación de la cesión al deudor se hará constar en la
> inscripción, si el documento que acredita haberse hecho aquélla se presentara
> en el Registro después de verificada la inscripción, se extenderá la
> correspondiente nota. Cuando proceda dar conocimiento al deudor de la
> cesión del crédito hipotecario, si se omite tal requisito será responsable el
> cedente de los perjuicios que pueda sufrir el cesionario por consecuencia de
> esta falta.

Por su parte, la referida Sección 2614, expresa lo siguiente:

> Cuando la hipoteca se hubiere constituido para garantizar títulos transferibles
> por endoso o al portador, el derecho hipotecario se entenderá transferido, con
> el título, sin necesidad de dar de ello conocimiento al deudor, ni de hacerse
> constar la transferencia en el Registro.". Artículo 195 de la Ley Hipotecaria, 30
> L.P.R.A. sec. 2614.

Claramente, el caso de autos cae dentro de las excepciones que provee el Artículo

195 antes citado. Una de estas excepciones es cuando la hipoteca se hubiese constituido

para garantizar títulos transferibles por endoso o al portador, tal y como sucede en el caso

de autos, ya que el derecho hipotecario se entiende transferido con el título, sin necesidad

de dar conocimiento de ellos al deudor, ni de hacerse constar la transferencia en el Registro.

Véase Art. 195 de la Ley Hipotecaria, *supra*.

En relación a ello, en <u>FDIC v. Registrador</u>, 111 D.P.R. 602, 606-607 (1981), el

Tribunal Supremo de Puerto Rico expresó lo siguiente:

> La transmisión de instrumentos negociables es esencialmente clandestina
> respecto al Registro de la Propiedad. Esa es su virtud y su dificultad en
> algunos casos. Lo que pretende el recurrente es aparecer como acreedor
> determinado en el Registro, pero sin que pierda el instrumento su carácter
> negociable. Esto nos parece institucionalmente imposible.

Los hechos en el caso de epígrafe representan claramente la excepción estructurada

por el Art. 195 de la Ley Hipotecaria, *supra*, toda vez que en el presente caso se trata de

unos pagarés y pagarés hipotecarios, los cuales, al momento de la cesión de éstos, fueron

debidamente endosados a favor de ALD. A la luz de lo anterior, la alegación de los

Demandados de que ALD tenía la obligación de notificarles de forma notarial sobre la

transferencia del crédito hipotecario a su favor no procede.

18

Sentencia
Civil Núm. K CD2012-2724 (803)

Igualmente alegaron los Demandados en su Reconvención que los garantizadores no renunciaron expresamente al beneficio de excusión que provee el Artículo 1729 del Código Civil, 31 L.P.R.A. sec. 4891. Dicho artículo establece que "el fiador no puede ser compelido a pagar al acreedor sin hacerse antes excusión de todos los bienes del deudor". Sin embargo, el artículo que le sigue dispone que esta excusión no tenga lugar cuando el fiador se haya obligado solidariamente con el deudor. Artículo 1730 del Código Civil, 31 L.P.R.A. sec. 4892. En el caso de autos, según surge de los documentos que obran en autos, los garantizadores se obligaron solidariamente con el deudor. Por tal razón, los garantizadores no tenían que renunciar expresamente a un beneficio que no tienen por haberse obligado solidariamente. Así, este Tribunal declara sin lugar la Reconvención de los Demandados a tales efectos.

La codemandada María Magdalena Benítez Rodríguez alega que la demanda es inexigible por violación al estatuto federal del Equal Credit Opportunity Act (en adelante "ECOA"), 15 *U.S.C.A. §§ 1601 et seq.*, y la reglamentación federal correspondiente (en adelante "Reglamento B"), *12 C.F.R. §§ 201 et seq.* Considerados los argumentos de las partes aplicados a los hechos del caso, rechazamos los argumentos de la codemandada. Veamos.

Para incurrir en una violación al antes mencionado estatuto, debe establecerse:

"[P]ara que se configure una causa de acción por discrimen basado en el estado marital se tiene que cumplir con los siguientes requisitos: (1) una solicitud de una cuenta de crédito individual por una persona casada; (2) que el solicitante cualifique individualmente para recibir la cuenta de crédito; (3) que no apliquen ninguna de las excepciones; (4) que la entidad financiera exija la firma del cónyuge del solicitante." Véase, Eurobank v. ICA Plastics, Corp., KLAN 2013-0383, 2013 WL 5595709 (2013).

Por ende, es indispensable que la codemandada Benítez estuviera casada con el codemandado, Guzmán al momento de otorgar la garantía de referencia. El Tribunal toma conocimiento que en las garantías que ambos codemandados, Benítez y Guzmán, firmaron el 30 de junio de 2005, ambos comparecieron como personas solteras. La codemandada Benítez no estaba casada con el codemandado Guzmán al momento de otorgar las garantías que hace referencia la parte Demandada. Además, aún de aceptar el argumento de la parte Demandada, el cual contradice los documentos otorgados ante notario público, la causa de acción bajo ECOA no procede por dos razones: (1) la misma

19

Sentencia
Civil Núm. K CD2012-2724 (803)

está prescrita; y (2) el discrimen por matrimonio al amparo de ECOA no procede en casos de préstamos comerciales.

Sabido es que ECOA provee una causa de acción civil en contra del acreedor que discrimine por cualquiera de las razones contenidas en la ley y el reglamento, y concede como remedios daños reales y daños punitivos, entre otros, para una víctima de discrimen bajo sus disposiciones. 15 USC § 1691e. El término prescriptivo de una acción civil de este tipo se encuentra en la §1691e (f) del estatuto y es de dos años a partir del otorgamiento de los contratos aquí en controversia. Es decir, una acción civil bajo las disposiciones de ECOA debía ser presentada dentro del período de dos años luego de que el alegado discrimen ha ocurrido. Ver Cottrell v. Vilsack, 915 F. Supp. 2d 81, 90 (D.D.C. 2013) aff'd, 13-5024, 2013 WL 4711683 (D.C. Cir. July 31, 2013); Palmer v. Homecomings Financial LLC, 677 F.Supp.2d 233, 239 (D.D.C.2010); Oriental Bank and Trust v. Rodriguez Pagan, KLAN 2012-01907, KLAN 2012-01913, 2013 WL 2298139 (2013).

En el caso ante nos, las reclamaciones bajo las disposiciones de ECOA fueron presentadas en el mes de abril de 2013. Esto significa que cualquier hecho discriminatorio que dé base para una reclamación en virtud de las disposiciones de ECOA debió producirse dentro de los dos años anteriores a esa misma fecha, es decir, desde el mes de abril de 2011. Los préstamos aquí en controversia fueron todos otorgados durante el mes de junio de 2005.

Ese término prescriptivo se extendió a cinco años mediante la aprobación del Dodd–Frank Wall Street Reform And Consumer Protection Act, Pub.L. 111–203, Title X, §§ 1085(1), (5) to (7). Asumiendo que esa extensión es retroactiva y aplicable al caso de autos, aún así las reclamaciones bajo las disposiciones de ECOA están prescritas toda vez los alegados discrímenes ocurrieron fuera del período de cinco años antes de la presentación de la demanda.

Por ser un préstamo comercial, tampoco procede la aplicación de las disposiciones de ECOA citadas por la parte Demandada. En el caso de autos, no se configuran los requisitos antes esbozados toda vez los contratos otorgados no están dirigidos a cuentas

20

Sentencia
Civil Núm. K CD2012-2724 (803)

de crédito individual sino a cuentas de índole comercial. Por esa razón dichos contratos no están cobijados bajo las disposiciones de discrimen por razón de estado civil contenidas en ECOA. Véase, Eurobank v. ICA Plastics, Corp., KLAN 2013-0383, 2013 WL 5595709 (2013) (Resolviendo "Finalmente, cabe destacar que la interpretación oficial de la sección 202.7 del Reglamento B, dispone que el propósito de dicha sección es permitir que los solicitantes cualificados puedan obtener cuentas de crédito a su nombre. Es decir, esta sección solamente aplica a solicitudes de cuentas de crédito hechas por individuos") (Énfasis nuestro).

Por lo anterior resolvemos que la causa de acción bajo ECOA no procede, sea por la codemandada Benítez no estar casada con el codemandado Guzmán al momento de otorgar la garantía en cuestión, sea por tratarse de un préstamo comercial, o sea por estar prescrita la misma.

## CONCLUSIÓN

En este caso no hay controversia de hechos con relación al otorgamiento de los documentos que evidencian la obligación que se reclama. La parte Demandada aceptó haber suscrito los mismos así como la garantía prendataria e hipotecaria, siendo corolario legal y jurisprudencial que viene obligada al cumplimiento de lo expresamente pactado.

Ante los hechos que este Tribunal encuentra probados, la firma de los documentos e incumplimiento de pago de la obligación, hechos que la parte Demandada no controvirtió, los términos claros y precisos a los cuales la parte Demandada se obligó sin que surja fundamento o justificación en derecho que libere a la parte demandada del cumplimiento específico de lo pactado y aplicando el derecho antes esbozado, este Tribunal dicta Sentencia Sumaria con los siguientes pronunciamientos.

Se condena a las partes Demandadas a pagar solidariamente a la parte Demandante, en cuanto al Préstamo A, la suma principal de $2,900,000.00, más la cantidad de $289,582.53 por concepto de intereses acumulados hasta el 23 de marzo de 2012, los cuales continúan acumulándose al tipo pactado hasta el pago total de la deuda, más la suma pactada de $290,000.00 para costas, gastos y honorarios de abogado.

21

Sentencia
Civil Núm. K CD2012-2724 (803)

Así mismo se condena a los codemandados Porfirio Guzmán Robles y Las

Américas 74-75, Inc. a pagar solidariamente a la parte demandante la suma principal de

**$1,100,000.00**, más la cantidad de **$135,384.43** por concepto de intereses acumulados

hasta el 23 de marzo de 2012, más intereses sobre el principal adeudado al tipo pactado

hasta el total y completo pago de la deuda, más recargos por atraso por la suma de

**$5,553.70**, más la cantidad de **$110,000.00** estipulada para costas, gastos y honorarios de

abogado.

Advenida firme la presente Sentencia sin que la parte Demandada haya satisfecho

la misma, se ordena al Señor Alguacil de este Tribunal que proceda a la venta en pública

subasta y al mejor postor, de los siguientes pagarés e inmueble:

Pagaré Hipotecario por la suma principal de Dos Millones de Dólares ($2,000,000.00), garantizado por primera Hipoteca "pari-passu" constituida mediante la Escritura Número 50, otorgada el 30 de junio de 2005, ante el Notario Público Bianca A. Landrón Baralt.

Pagaré Hipotecario por la suma principal de Seiscientos Cincuenta Mil Dólares ($650,000.00), garantizado por primera hipoteca constituida mediante la Escritura Número 3, otorgada el 26 de enero de 1988, ante el Notario Público Jorge Souss Villalobos, según modificada por la Escritura Número 51, otorgada el 30 de junio de 2005, ante la Notario Público Bianca A. Landrón Baralt.

Pagaré Hipotecario por la suma principal de Doscientos Cincuenta Mil Dólares ($250,000.00), garantizado por primera hipoteca constituida mediante la Escritura Número 62, otorgada el 1 de julio de 1991, ante el Notario Público Luis López Correa, según modificada por la Modificación de Hipotecas.

Los Pagarés Hipotecarios antes mencionados están garantizados por hipotecas

sobre el inmueble que se describe a continuación:

---"URBAN: Industrial Tract identified as Jot C-1, on the plan prepared by Mister Héctor A. Deliz, Civil Engineer, License #1029, dated December 15, revised on December 17 and 18 of the year nineteen hundred and sixty three, comprising four thousand two hundred and seventy six square meters ten square centimeters. Bounded on the NORTH and EAST, with property of the principal tract from which it is segregated, on the SOUTH, with property of the principal tract from which it is segregated and lot A, the property of Westinghouse Electric Corporation, on the WEST, With C street of the development and with cul de sac to be dedicated to public use, which has the following geometric description, utilizing lambert coordinated of X is equal to one hundred and nine point one hundred and eighty five point fifty two and "Y", equals sixty five point nine hundred and two point forty seven from point five on the plan. North twenty six degree thirty two minutes thirty seconds West in a distance of fifty four meters fourteen centimeters. Then Easterly in an arc of six meters fifty centimeters radius then in a straight line four four meters, thence North twenty six degrees thirty two minutes thirty seconds West in a distance of thirteen meters thence North eighty seven degrees forty six minutes East in a distance of nineteen meters eighty centimeters to point three on the plan, thence South eighty degrees forty one minutes fifty seconds in a distance of forty seven meters one centimeters to point four, thence South sixty three degrees fifty one minutes thirty seconds in a distance of thirty five meters seventy one

Sentencia
Civil Núm. K CD2012-2724 (803)

centimeters four a thence South thirty five degrees fifty nine minutes West in a distance of twenty meters fifty six centimeters to point four thence South sixty three degrees twenty seven minutes thirty seconds West in a distance of seventy meters to point five, the point of origin, on this lot there has been erected an industrial building made of structural steel with bar joints, steel roof deck, insulation and built up roof, concrete block walls, Miami windows, reinforced concrete floor with an area of twenty five thousand square feet of which three thousand are set apart for use as office and air conditioned with a hung ceiling fluorescent lamp, resilient floor tiles, glass jalousies bathroom facilities. The patio around the building is paved with concrete."

La propiedad hipotecada consta inscrita al folio 38 del tomo 822 de Río Piedras Norte, Sección Segunda de San Juan, finca número 24,040.

Servirá como tipo mínimo para la primera subasta del inmueble la suma correspondiente al Pagaré Hipotecario que la parte Demandante determine ejecutar mediante oportuna moción solicitando la ejecución de la sentencia.

Si no produjera remate ni adjudicación del inmueble antes indicado en la primera subasta, se procederá a la celebración de una segunda subasta en la que servirá como tipo mínimo una suma igual a dos terceras partes del valor pactado para el inmueble antes indicado. Si tampoco hubiera remate ni adjudicación en la segunda subasta, se celebrará una tercera subasta en la que servirá como tipo mínimo una suma equivalente a la mitad de dichos valores pactados para el inmueble antes indicado.

Del producto de dicha venta procederá el Señor Alguacil a pagar en primer término, los gastos del Alguacil, en segundo término, las costas, gastos y honorarios de abogado hasta la suma convenida, en tercer término, los intereses acumulados hasta la fecha de la subasta, en cuarto término las sumas en esta Sentencia establecidas para el pago de recargos por demora y en quinto término, las sumas principales adeudadas conforme a la presente Sentencia. El remanente, si alguno quedare luego de satisfacerse las sumas mencionadas, deberá ser depositado en la Secretaría hasta ulterior disposición del Tribunal, pero si dicho producto resultare insuficiente para cubrir el pago de las antes indicadas sumas, entonces la parte Demandada satisfará a la parte Demandante el remanente insoluto de la deuda.

Celebradas las subastas y adjudicadas la propiedad gravada por las hipotecas objeto de este litigio, el señor Alguacil procederá a otorgar la escritura de traspaso al licitador victorioso en la subasta, quien podrá ser la parte Demandante, cuya oferta podrá

Sentencia
Civil Núm. K CD2012-2724 (803)

aplicarse a la extinción total o parcial de las deudas que aquí se establecen. Luego de efectuada la venta judicial, el señor Alguacil procederá a poner al comprador en posesión material de la propiedad ejecutada dentro del plazo de veinte (20) días desde la fecha de la venta en pública subasta, de conformidad con las disposiciones aplicables de ley, ordenándose, además, al señor Alguacil, que, de ser necesario, proceda al lanzamiento del (los) ocupante(s) de la propiedad subastada, sin necesidad de orden o disposición posterior por el Tribunal.

Previa orden del Tribunal a tales efectos, el señor Secretario expedirá el correspondiente Mandamiento al Honorable Registrador de la Propiedad para que proceda a cancelar los gravámenes posteriores, si alguno, a los aquí ejecutados y que surjan de los libros del Registro de la Propiedad a su cargo.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, a ____ de _____ de 2015.

PEDRO J. POLANCO
JUEZ SUPERIOR

CERTIFICO:
GRISELDA RODRIGUEZ COLLADO
Secretaria Regional
Elsa Magaly Candelario
Por:_____
Secretaria Auxiliar

24





RECEIVED
JAN 1 2 2015
FERRAIUOLI LLC

Lic. Jean L. Vidal Font
PO Box 195168
San Juan, PR 00919-5168

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
SALA (SUPERIOR, MUNICIPAL), DE

CENTRO JUDICIAL DE SAN JUAN
PO BOX 190887
SAN JUAN, PUERTO RICO 00919-088