**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 15-01527 (EAG) |
| LAS AMERICAS 74-45, INC. | CHAPTER 11 |
| DEBTOR IN POSSESSION | |

**DEBTOR'S DISCLOSURE STATEMENT AND**
**SUMMARY OF PROPOSED PLAN OF REORGANIZATION**
**DATED JULY 13TH, 2015**

**ARTICLE 1. INTRODUCTION**

1.0     DEFINITIONS

1.1     BANKRUPTCY CODE PROVISIONS FOR POST PETITION DISCLOSURE

1.2     DISCLAIMER

1.3     VOTING REQUIREMENTS

1.4     DEBTOR'S HISTORY

1.5     EVENTS LEADING TO BANKRUPTCY

1.6     DATE THE PETITION WAS FILED

1.7     BANKRUPTCY PROCEEDINGS

1.8     FINANCIAL INFORMATION

**INTRODUCTION**

Las Américas 74-75, Inc., (the "Debtor"), was incorporated in 2004 by Mr. Porfirio Guzmán and Mrs. María M. Benítez, and is the owner of certain real estate property located at the Hato Rey Ward, in San Juan, Puerto Rico, right next to the recognized area of Plaza Las Américas.  Through the instant bankruptcy proceeding, the Debtor will be able to maximize the return of its assets while providing distribution to all of its creditors, including payment to

1

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

its secured creditor ALD Acquisition, LLC.  Accordingly, the Debtor herein submits the instant

Disclosure Statement and Summary of Proposed Plan of Reorganization.

### 1.0   DEFINITIONS

For purposes of this disclosure statement, and to the extent not otherwise provided

herein, all capitalized terms below shall have the meanings set forth in the Plan of

Reorganization proposed by the Debtor of even date herewith and, unless otherwise indicated,

the singular shall include the plural, and any term used in this disclosure statement which is

not defined in the Plan of Reorganization, but which is defined in the Bankruptcy Code (11

U.S.C.), shall have the meaning designated in the Bankruptcy Code.

### 1.1   BANKRUPTCY   CODE   PROVISIONS   FOR   POST   PETITION   DISCLOSURE

Section 1125 of the Bankruptcy Code requires that a debtor make post-petition

disclosure in the form of disclosure statement which provides "adequate information" to its

creditors before a debtor or a party acting on its behalf may solicit acceptances of a Chapter 11

plan of reorganization.  Creditors are urged to consult with their own attorney, or with each

other, and to review all of the pleadings and other documents on file with the Bankruptcy Court

in order to fully understand the disclosure made herein, regarding the Debtor's proposed plan

of reorganization (hereafter referred to as the "Plan") and any other pertinent matters in this

case.

### 1.2   DISCLAIMER

Creditors are advised that the financial information contained in this Disclosure

Statement has not been the object of an audit and is not certified by independent public

accountants, except where expressly stated otherwise.  The Debtor does not warrant or intends

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

to represent that the information contained herein is without inaccuracy notwithstanding its efforts to disclose all matters with careful attention to accuracy and completeness.

The Debtor does not authorize any representation concerning the Debtor, and/or any other statement relative to it, different from, or not included in this Disclosure Statement. A creditor in deciding how to vote for the Plan should not rely on any representation or inducement that might be made to influence in the acceptance or rejection of the Plan.

### 1.3  VOTING REQUIREMENTS

In order for the Plan to be confirmed by the Bankruptcy Court, the Bankruptcy Code requires that the Plan be approved by all classes of creditors and interest holders or that the Court finds that the Plan is "fair and equitable" as to any dissenting class.

As provided by 11 U.S.C. §1124, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such a class, the plan–

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default –

    A. cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

    B. reinstates the maturity of such claim or interest as such maturity existed before such default;

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

    C.  compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

    D.  does nor otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Ordinarily, but not in all circumstances, a plan may not be confirmed unless at least one impaired class, assuming there is at least one impaired class, accepts the plan.

A class has accepted the plan if such a plan has been accepted by creditors, other than those under 11 U.S.C. §1126 (e), that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims of such class held by creditors, that have accepted or rejected such plan, i.e., those actually voting on the plan.

Creditors may vote for the acceptance or for the rejection of the plan.

Each creditor is urged to consult with its own attorney and obtain advice on the proposals and dispositions of this Disclosure Statement and the Plan. The statements contained herein are only a brief summary of the confirmation process and should not be relied upon in making your determination as to whether to vote in favor of or against the Plan. Creditors should consult their attorneys before making a determination to vote for or against the Plan.

Creditors are expressly referred to the Debtor's Schedules of Assets and Liabilities, the Statement of Financial Affairs and all other documents duly filed in this case with the Bankruptcy Court. This Disclosure Statement is predicated upon certain assumptions that may not materialize, and you are urged to give consideration to such assumptions.

No representation concerning the Debtor or as to the actual or realizable value of its property, are authorized by the Debtor other than as set forth in this Disclosure Statement. Any

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

amendments or clarifications to this Disclosure Statement or the Plan shall be in writing and filed with the Court.

### 1.4    DEBTOR'S HISTORY

### BACKGROUND

Debtor's history commences with Mr. Porfirio Guzmán and Mrs. María M. Benítez. as the founders of El Piex Puertoriqueño, Inc. ("El Piex") which today does business as "A la Orden Discount". The origin of this recognized store, dates back to 1977, when Mr. Guzmán and Mrs. Benítez, commenced selling furniture from the garage of their own home through catalogs. To start their business, they contacted various vendors and began to offer furniture directly from catalogs to their neighbors and friends. Any potential customer would visit them at their house, brief through the catalogs and place their orders (hence, the name "A la Orden Discount").

The prices that Mr. Guzman and Mrs. Benitez offered were so competitive within their industry that "word-of-mouth" spread quickly, and day by day they received more and more customers. With the high demand on sales that they were having, by the end of 1977, Mr. Guzmán and Mrs. Benítez decided to rent a small space at "Cooperativa Rochdale Taxi". Although they moved to a bigger place than that of their garage, their business still consisted of a couple of catalogs and a desk. At this new place, their potential market expanded even more, as all of the members and/or visitors of the "Cooperativa Rochdale Taxi", got to know their business too. The quick expansion of sales, led Mr. Guzmán and Mrs. Benítez to eventually need a bigger place.

By December 1981, Mr. Guzmán and Mrs. Benítez, rented Lot No. 75 as their new place of business, now as a "store". By placing their business in these new premises, their sales expanded even more, until they became the well-known furniture store that still is today.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

For several years, A la Orden Discount was the main dealer in sales for renowned vendors such as General Electric, MaytagWestinghouse, Whirpool, Sealy, Simmons, Panasonic, and Sony, among others.

On or about the year 1991, Mr. Porfirio Guzmán and Mrs. Maria M. Benítez, purchased Lot 75, the real estate property where el Piex was leasing. Eventually, they also acquired Lot 74, the property next to Lot 75, which was leased to "White Westinghouse PR Corp.".

On November 16th, 2004, Mr. Guzmán and Mrs. Benítez incorporated "Las Américas 74-75, Inc." ("Las Americas"). In 2005, after this corporation was created, both founders transferred Lot. No. 74 and Lot No. 75 in favor of Las Américas, in exchange for the shares of the corporation.

Lot 74 and Lot 75 are exclusive lots of land, located right next to the recognized shopping center of "Plaza Las Américas" owned by the Fonalledas-family (Empresas Fonalledas, Inc.). These properties are located at Frank Becerra Street, in Hato Rey, Puerto Rico and happen to be the only two lots within this area, that are not owned by the Fonalledas-family. *See* **Exhibit 1**, Aerial Photo of the properties.

For purposes of this Disclosure Statement, these two real estate properties will be hereinafter referred to as "Lot No. 74" and "Lot No. 75", which are identified in the Property Registry of San Juan, as Lot No. 24031 and Lot No. 24040, respectively. *See* **Exhibit 2**, Title Study for Lot 74 and **Exhibit 3**, Title Study for Lot 75.

**THE LOANS:**

Lot.74 - First Lien ($4,380,000)

In June 1991, after purchasing Lot No. 74, Mr. Guzmán and Mrs. Benitez entered into a long-term lease agreement with White Westinghouse PR Corp. Pursuant to the terms of lease agreement, the rent payments would significantly decrease with time. A few years after the

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

lease payments commenced to reduce, Mr. Guzmán and Mrs. Benítez decided that it was significantly more convenient to purchase the contract and finalize the lease with the lessee. Therefore, with the purpose of purchasing the contract with White Westinghouse, on 2002, Mr. Guzmán and Mrs. Benitez entered into a Credit Agreement with Bank & Trust of PR ("Bank & Trust") in the amount of $4,380,000. To secure the obligations under the loan Mr. Guzmán and Mrs. Benítez issued a first rank Mortgage Note in the amount of $4,380,000 over Lot No. 74.

Subsequently, Bank & Trust was acquired by Eurobank and the latter became the new Lender under the loan. In October 22, 2008, the balance owed under the loan had been reduced to $4,121,000. As of this date, the principal amount owed under this Credit Agreement is $3,955,000. However, the original first rank mortgage note over Debtor's Lot No. 74, in the amount of $4,380,000 continued to serve as collateral to the loan.

Lot.74 - Second Lien ($3,250,000)

On 2001, El Piex Puertorriqueño, Inc., was granted two credit facilities by Bank & Trust: a revolving line of credit of $2,000,000 ("Note I") and another line of credit of $500,000 ("Note II") for the purpose of purchasing inventory during the peak periods of El Piex.

The Credit Agreement executed on 2001, was amended in 2002 in order to provide for an additional credit facility to El Piex, in the amount of $500,000. Subsequently, in 2003, a second amendment was made to the original Credit Agreement, in which the credit facility of $2,000,000 was increased to $2,500,000. Thus, the total amount of debt as to these particular credit facilities granted by Bank & Trust, were in the total amount of $3.5 million dollars.

On October 22, 2008, Eurobank restructures all the credit facilities of El Piex and requires that Debtor serves as guarantor and provides a collateral for these loan. Even though

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

the total amount financed to the Piex under the 2008 Credit Agreement was $5M, the Debtor executed a second rank mortgage note over Lot No. 74, limited to the amount of $3,250,000.

Upon closing of certain financial institutions, all of the above-mentioned loan obligations issued originally by Bank & Trust, were restructured by Eurobank, and then acquired by Oriental Bank & Trust PR ("Oriental").

As of this date, the total principal amount owed for these credit facilities is $4,716,997.49, detailed as follows (i) for the $2M credit facility the principal owed is $1,904,497.55; (ii) for the $500,000 credit facility, the principal amount owed is $500,000; and (iii) for the Term Loan of $2.5M, the principal owed is $2,312,499.94. However, the second lien over the property is limited to $3,250,000.

Lot 75- First Lien ($2,900,000)

On June 30, 2005, the Debtor and R-G Premier Bank originally executed a Term Loan Agreement in the total amount of $13,900,000. As of this date, the indebtedness is $2,900,000 guaranteed by three notes; $650,000, $250,000 and $2,000,000. This notes served as guarantee to a third party's loan to R-G Premier who defaulted in the loan and never paid. Upon closing of R-G Premier Bank, this loan was sold to Scotiabank PR, who becomes the holder in interest under the Notes.

Lot 75-Second Lien ($1,100,000)

On 2007, Mr. Porfirio Guzmán obtained a loan from R-G Premier Bank in the amount of $1,100,000 to make property tax prepayment on capital gains, due to certain offers made by the government of the Commonwealth of Puerto Rico with the intent to increase public funds. To secure this obligation with R-G Premier Bank, Lot 75 was encumbered with a second rank note in the amount of $1,100,000.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

Lot 75-Third Lien ($900,000)

On 2009, El Piex Puertorriqueño, Inc., with the need to acquire additional funds to supply its business operations, enters into a commercial loan agreement with the Economic Development Bank of PR ("EDB") in the amount of $900,000. In order to secure this obligation, the Debtor provided a third rank mortgage lien in the amount of $900,000.

Upon defaulting on payment under this loan agreement, on May, 2011, the EDB files a complaint for execution of mortgage in the PR State Court against El Piex Puertorriqueño, Inc. and its guarantors[1], in the amount of $710,133.36 including principal and interests. These proceedings were under Case No. KDC 2011-1236.

On January 2012, ALD substitutes EDB in the litigation proceedings. Subsequently, on October 2013, Judgment was entered by the PR State Court in favor of ALD.

**EMPRESAS FONALLEDAS' INTENT TO PURCHASE LOT 74 AND 75**

Empresas Fonalledas, Inc. had always shown interest in acquiring both Lot 74 and Lot 75. In fact, since April 29, 2003, the parties discussed the terms of a sale, including but not limited to how the sales price would be established. That is, the parties agreed to hire one or two appraisers with vast experience within the commercial industry and once these appraisals were received, the parties would negotiate the final price. Empresas Fonalledas, Inc. also informed that even though it was interested in purchasing both lots, it may only acquire Lot No. 74 as the same may be grouped with another adjacent property that they own. *See* **Exhibit 4,** Letter dated May 1st, 2003.

By 2004, since the negotiations did not prospered, Debtor's President hired the services of Sierra Cardona Ferrer, a renowned architects' firm, for the purpose of developing both Lots

---

[1] The Economic Development Bank of PR now, ALD Acquisition, LLC., vs El Piex Puertorriqueño, Inc. D/B/A, A la Orden Discount, Mr. Porfirio Guzman, Maria M. Benítez, and Las Américas, 74-75, Inc. Case No. KCD 2011-1236

9

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

74 and 75 for commercial purposes. In the meantime various entities showed interest in purchasing the properties; i.e. Caribbean Property Group, LLC. and Gables Holding Corporation. The offers received, ranged over and above $30M. Debtor's president continued with its interest of developing these lots.

Thereafter by 2008 the economic conditions of Puerto Rico commenced shaking. Debtor's President tried to negotiate with the lien holders the acquisition of the Notes at a discount price. By the end of 2009, Empresas Fonalledas, Inc., contacted again the Debtor with the interest of purchasing the properties. The best offer made by the Fonalledas, was $10M for both of the properties. The Debtor declined this offer.

From 2011 forward, Empresas Fonalledas, through a new entity named ALD Acquisition, Inc. negotiates with the Banks and purchases all the Notes that encumber Lots 74 and 75.

## 1.5    EVENTS LEADING TO BANKRUPTCY

Throughout the last 10 years, El Piex Puertorriqueño, Inc. doing business as "A la Orden Discount", has been Debtor's lessee for Lot No. 75. With the proceeds that the Debtor receives from the rent the Debtor would pay its obligations under the loan agreements. However, due to the current economic situation and to the decrease in sales, El Piex commenced to experience rough economic conditions, which eventually led to not being able to comply with its payments under the lease agreement. Thus, the Debtor inevitably defaulted on its obligations with its secured creditors.

On December 2010, Oriental Bank PR, commenced collection actions against El Piex Puertorriqueño, Inc. Mr. Porfirio Guzman, Maria M. Benítez, and Las Américas, 74-75, Inc. to collect amounts owed and foreclose over the liens of Lot. 74, under Case No. KCD 2010-3910.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

On May 2011, the EDB commence collection and foreclosure actions for debts guaranteed by the third Rank lien over Lot 75, under Case No. KCD 2011-1236.

By 2012 after ALD Acquisition, LLC purchased all the Notes over Lot 74 and Lot 75, and continued with the collection actions already commenced and initiated against El Piex Puertorriqueño, Inc. Mr. Porfirio Guzman, Maria M. Benítez, and Las Americas, 74-75, Inc. to collect all amounts owed guaranteed with loans over Lot 75, guaranteed by first and second liens, under Case No. KCD-2012-2724.

**CASE NO. KCD 2010-3910 (LOT 74)**

This collection action was commenced by Oriental Bank in 2010. During the course of the litigation proceedings in State Court, ALD Acquisition, LLC., purchased all of the rights and interests of Oriental under "Loan I" & "Loan II" over Lot 74, and on February 2012, ALD substitutes Oriental in the State Court proceedings. ALD commenced aggressive litigation against the Debtor, with the sole purpose of pursuing its only interest in this case: the foreclosure of Lot 74.

During the course of the State Court proceedings, Defendants requested, on several occasions, to reconcile the amounts claimed, but were never provided with such detail. ALD simply limited to provide "bulk" figures for the total amount of the claim, which pursuant to Debtor's records, was considerably in excess of the actual amounts owed. The Defendants also requested a certification of debt, since Walgreens was interested in purchasing Lot 74 for $16M.

Finally, on February 26, 2014, the Debtor sold Lot No. 74. As soon as the sale of the property was executed, the Debtor informed the State Court about the sale and formally requested that ALD be ordered to provide a detail on the exact amounts owed in order to pay this creditor in full and obtain the cancellation of these mortgage notes over Lot 74. ALD

11

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

inexplicably refused to provide a detail on the amounts owed regarding this property, and refused to accept payment from the Debtor. Pursuant to the information provided by ALD to the PR State Court on June 2013, the debt as of May 31, 2013, was allegedly $12,757,000.66. *See* **Exhibit 5,** Affidavit issued by Mr. Gilberto del Valle, Treasurer of ALD. The Debtor continued to request a detail on the alleged amount owed, and on November, 2013, ALD presents the Debtor with a new number: $13,908,157.41. *See* **Exhibit 6,** Motion filed by ALD.

Even though the Debtor contested and still contests the amounts being claimed by ALD, the Debtor had no other alternative than to consign the payment to ALD with the PR State Court, under the clarification that the amount claimed needed to be reconciled and reserving its rights to verify the amounts owed. The amount consigned on February 26, 2014 was $13,732,659.89 (which is in excess of the principal amount owed under the loans). *See* **Exhibit 7,** Motion for Consignment of Funds.

On December 2014, the PR State Court issued a Judgment in which it (i) declared that the total amounts due under the loans as of May 2013, were $12,757,000.66 (which information was provided by an Affidavit submitted by ALD -- without computation of this amount); (ii) acknowledged the consignment of funds in the amount of $13,732,659 made by the Debtor; (iii) and explicitly left to the parties the reconciliation of the debt.

Since there has been no cooperation from ALD for the reconciliation of the debt, as of this date, the funds are still consigned as payment in full of ALD's claim for the mortgage notes that encumber Lot No. 74, which are (i) a first rank Mortgage Note of $4,380,000; and (ii) a second rank Mortgage Note of $3,250,000. Reconsideration of this Judgment was requested.

**CASE NO. KCD-2012-2724 (LOT 75)**

As it is detailed above, Plaza Las Americas, or "Empresas Fonalledas", through ALD Acquisition, LLC, also acquired all of the mortgage notes over Lot No. 75. The Debtor has

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

exhausted all efforts to negotiate with this creditor, but Debtor's intents yielded no results, as this creditor's only interest is the acquisition of Debtor's real estate properties at a very low cost. On November 2012, after purchasing the Notes from Scotiabank, ALD filed a collection and foreclosure action against Lot 75.

Finally, after two years of aggressive litigation, ALD Acquisition, LLC., obtained judgment(s) against the Debtor for Lot 75.

In order to prevent the foreclosure of Lot 75 at a very low price and in order to liquidate the amounts owed to ALD from the sale of Lot 74, the Debtor had no other option than to file for relief under the provisions of Chapter 11. Through the instant bankruptcy proceeding, the Debtor intends to pay in full ALD's allowed secure claim and the allowed unsecured claim, after being able to reconcile the amounts owed, and in this way, be able to maximize the return of its assets, once this creditor's claim is duly reconciled.

## CASE NO. KDC 2011-1236 (Lot 75)

The Economic Development Bank of PR ("EDB") holds a third rank lien in the amount of $900,000 over Lot 75. Upon defaulting on payment under this loan agreement, on May, 2011, the EDB files a complaint for execution of mortgage in the PR State Court against El Piex and its guarantors, in the amount of $710,133.36 including principal and interests. These proceedings were under Case No. KDC 2011-1236. On January 2012, during the course of the litigation proceedings, the EDB is substituted by ALD. On October, 2013 ALD obtained judgment against the Debtor.

## 1.6    DATE THE PETITION WAS FILED

On March 2, 2015, the Debtor filed for relief under the provisions of Chapter 11 of the Bankruptcy Code. *See* Docket No. 1. The Debtor is a "Single Asset" case as defined in Section 101(51B) of the Code. *See* 11 USC §101 (51B).

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

Since the filing of its bankruptcy petition, the Debtor has been performing as a "Debtor in Possession" in full compliance with all of its duties and responsibilities required by the Guidelines of the US Trustee and by the Bankruptcy Code, including but not limited to the timely filing of all of its Monthly Operating Reports and payment of fees to the U.S. Trustee.

## 1.7    BANKRUPTCY PROCEEDINGS

### I.    Schedules, Statement of Financial Affairs and Creditors' Meeting.

On March 2, 2015, Debtor filed its Voluntary Petition under Chapter 11 with its Schedules, Statement of Financial Affairs, List of Creditors Holding the 20 Largest Unsecured Claims, and Corporate Resolution. *See* Docket No. 1.

On April, 1, 2015, the Debtor amended its Petition to correct the Street Address of the Debtor. (Docket No. 14). On the same day, the Debtor also filed its Amended Summary of Schedules, Amended Schedules "A" and "B", "D", "E" and "F", Amended Statement of Financial Affairs and Amended List of 20 Largest Unsecured Creditors. *See* Docket Nos. 15 & 16.

On April 6, 2015, the §341 Meeting of Creditors was held and closed and the minutes were entered on the same date. *See* Docket Nos. 10 & 19. After the Meeting of Creditors was held, the Debtor amended Schedules "A", "D" and "F" as per the U.S. Trustee's request. *See* Docket Nos. 22 & 24.

### II.    Employment of Professionals

The Debtor filed an application to employ its counsel, C. Conde and Associates on March, 2, 2015. This Application was approved by the Court on April 8, 2015. *See* Docket Nos. 5 & 20.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

On April 10, 2015, the Debtor filed an application to employ its Certified Public Accountant, Albert Tamárez Vasquez. On May 12, 2015, this the Application for Employment of Debtor's bankruptcy accountant, was approved by the Court. *See* Docket Nos. 25 & 31.

### III.     Duties of the Debtor in Possession

The Debtor has complied with all of its duties as a Debtor in Possession, including but not limited to the appearance at the meeting of creditors, the filing of all Monthly Operating Reports and payment of fees to the U.S. Trustee.

### IV.     Other Matters

The Debtor filed its petition under the provisions of Chapter 11 of the Code, as a "Single Asset" case, as such term is defined in Section 101(51B) of the Bankruptcy Code. Considering the provisions of Section 362(d)(3) of the Code, the Debtor had until June 1st, 2015, to file its Disclosure Statement and Plan. In order to reconcile the amounts owed to its secured creditor ALD Acquisition, LLC., which creditor had not filed its Proof of Claim, on May 18th, 2015, the Debtor filed a Motion Requesting Extension of Time under Section 362(d)(3) and Reduction of Time to Oppose under FRBP 9006(c). *See* Docket No. 36.

On May 28th, 2015, ALD Acquisition, LLC. filed a Notice of Appearance, and on the same date, it filed an "Intent to Oppose Debtor's motion Requesting Extension of Time under Section 362(d)(3) and Reduction of Time to Oppose under FRBP 9006(c)". *See* Docket No. 40 On the same date, May 28th, 2015, the Debtor filed its Opposition to ALD's Intent, and on May 29th, 2015, the Court entered an Order granting the Debtor until July 7th, 2015 to file its Chapter 11 Plan. *See* Docket Nos. 41 & 42.

On May 29th, 2015 after the Order granting Debtor's request for extension of time was entered, ALD filed a Motion to Alter or Amend Order, to which the Debtor opposed on June 3, 2015. *See* Docket Nos. 43 & 45. A hearing was scheduled by the Court for June 5, 2015 in

*In re: Las Américas 74-75, Inc. -- Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

order to consider the Motions filed by ALD and Debtor's Opposition thereto. *See* Docket No.

46. At the hearing, ALD withdrew its Motion to Alter or Amend, and the Debtor was granted

until July 13, 2015 to file its Disclosure Statement and Plan. *See* Docket No. 50.

## 1.8    FINANCIAL INFORMATION

Debtor's financial information previous to its bankruptcy petition is herein provided as

**Exhibit 8 & 9,** Debtor's Tax Returns and Financial Statements for the year 2014.

Additionally, the information provided in the Schedules and Statement of Financial Affairs

filed with the Court, reflect Debtor's financial situation as of the date of the filing of the

petition.

Monthly Operating Reports which will be available on the Bankruptcy Court's file

reflect the Debtor's post-petition finances. *See* **Exhibit 10,** Summary of Monthly Operating

Reports.

**ARTICLE II**
**ASSETS AND LIABILITIES**

## 2.1    REAL ESTATE

Debtor has an interest in the following real estate property:

a) Lot No. 75 Located at End of Frank Becerra Street, Hato Rey, Norte Ward, San

   Juan, Puerto Rico. This lot is registered as Lot No. 24,040 registered at Page 33 of

   Volume 822 of the Rio Piedras (North), Property Registry of San Juan Section II,

   and is described as follows:

   -URBAN: Industrial tract identified as lot C-1 on the plan prepared
   by Mister Hector A. Deliz, Civil Engineer, license #1029, dated
   December 15, revised on December 17 and 18 of the year 1963,
   comprising 4,276.10 square meters. Bounded on the NORTH and
   EAST with property of the principal tract from which it is
   segregated. SOUTH with property of the principal tract from which
   it is segregated and lot A the property of Westinghouse Electric
   Corp. and WEST with C street of the Development and with a cul
   de sac to be dedicated to public use. Which was the following

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

geometric description: Utilizing Lambert Coordinates of X is equal to one hundred and nine point one hundred and eighty five point fifty two and Y equal sixty five point nine hundred and two point forty seven from point five on the plan, North 26 degrees 32'30, west in a distance of 54.14 meters, then easterly in an arc of 6.50 meters radius then in a straight line for 4 meters; thence North 26 degrees 32'30, in a distance of thence South 35'59, west in a distance of 0.56 to point 4, thence south 63 grade 2730 in a distance of 13 meters thence North 87 grade 56' east in a distance of 19.80 meters to point F-3 on the Plan, thence South 80 degrees 41'50, in a distance of 47.01 meters, to point F-4; thence South 63 degrees 51'30 in a distance of 35.71 meters for a thence South 35 degrees 49' West, in a distance of 20.56 meters to the point 4; thence South 63 grade 27'30 West, in a distance of 70 meters to point 5, the point of origin.

On this lot there has been erected by the seller and industrial building made of structural steel with bar joists steel roof deck, insulation and build-up roof, concrete floor with an area of twenty five thousand square feet, of which three thousand are set apart for use as an office and air conditioned, with a hung ceiling, fluorescent lamp, resident floor tiles, glass jalousies and bathroom facilities. The patio around the building is paved with concrete.

Pursuant to the most recent Appraisal Report dated May 7th, 2015, Lot No. 75 is valued in the amount of $7,370,350.18 less the demolition of the current structure (if needed), the final appraisal value is $6,890,000. *See* **Exhibit 11**, Appraisal Report.

## 2.2    PERSONAL PROPERTY

Debtor's personal property are detailed in Debtor's Amended Schedule B (Docket No. 15) and are also included in the Liquidation Analysis Section of this Statement at Article IV below, which further provide details on personal property assets and their values. Debtor's personal property primarily consists of the funds consigned at the PR State Court, prepaid taxes and accounts receivable.

## 2.3    SECURED CREDITORS

Debtors' creditors holding secured claims were listed as follows:

a)    The Debtors listed ALD Acquisition, LLC.'s ("ALD") in the disputed amount of $12,757,000.00 holding a first lien ($4,380,000) and second lien ($3,250,000) over

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

Lot No. 74. Thereafter this creditor filed Proof of Claim No. 6 in the total amount of $14,761,721.57, of which $12,646,000 was claimed as secured.

b)   The Debtors listed ALD's claim in the amount of $4,824,966.96 holding a first lien ($2,900,000) and a second lien ($1,100,000) over Lot No. 75. Thereafter this creditor filed Proof of Claim No. 5 in the total secured amount of $3,846,110.99 and Proof of Claim No. 4 in the secured amount of $1,491,842.67.

c)   The Debtors listed ALD's claim in the amount of $800,133.36 holding a third rank lien ($900,000) over Lot No. 75. Thereafter this creditor filed Proof of Claim No. 3 in the secured amount of $879,268.66.

d)   The Debtors listed CRIM's claim as "unliquidated" and "contingent" in the amount of $54,518.79 for property taxes owed for Lot No. 74. Thereafter, CRIM filed Proof of Claim No. 1, in the amount of $57,255.41 of which $54,518.79 was claimed as secured.

e)   The Debtors listed CRIM's claim in the amount of $140,802.46 for property taxes accrued over Lot No. 75. Thereafter, CRIM filed Proof of Claim No. 1 in the total amount of $151,154.03 of which $140,802.46 was claimed secured.

f)   The Debtor did not list Puerto Rico Treasury Department, but after the filing it was notified with a debt for property taxes accrued pursuant to PR Act No. 7, in the amount of $24,698.62 over Lot No. 74 and $34,867.08 for property taxes accrued over Lot No. 75.

## 2.4   PRIORITIES

-   Pursuant to Debtor's Schedules, the PR Department of Treasury was listed in the amount of $63,453.00. As of this date, the Dept. of Treasury has not filed

*In re: Las Américas 74-75, Inc. -- Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

its Proof of Claim. As per Certification of Debt issued by the Department of Treasury, the priority amount owed is $4,680.

- The Municipality of San Juan filed Proof of Claim No. 2 in the total amount of $6,018.86. The full amount of this claim was listed as "priority" pursuant to §507(a)(8) of the Bankruptcy Code.

Details of the priority claims and treatment thereto are provided in subsection of Art. VII below; "Payment to Priorities under Section 507 (a)(8) of the Code".

## 2.5  GENERAL UNSECURED CREDITORS

General unsecured creditors were listed in Debtor's Schedules are detailed in the total amount of $22,510.19, which amount includes the unsecured portion of CRIM's claim and a loan owed by the Debtor to Mr. Porfirio Guzman, an insider of the Debtor. Thereafter ALD's proof of claims show unsecured portions which have been included in Debtor's Plan, below. *See* also Debtor's Amended Schedule F at Docket No. 22.

## ARTICLE III
## PENDING LITIGATION

Pending litigation to which the Debtor was a party as of the petition date, are the three proceedings that have been detailed above in Section 1.4 and are also listed in the Statement of Financial Affairs. The claims under these litigation proceedings, have been considered under Debtor's Plan. The Debtor has no additional pending litigation.

## ARTICLE IV
## LIQUIDATION ANALYSIS

One requirement for the confirmation of a plan under Chapter 11 of the Code is that with respect to each impaired class of claims, each claim holder of such class has accepted the plan or will receive or retain under the plan on account of such allowed claim, a value as of the effective date of the plan, that is not less than the amount such claim holder would receive or

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

retain if the debtor were liquidated under Chapter 7 of the Code, on such date. The liquidation analysis attached as **Exhibit 12** shows a liquidation value of 28%. The Debtor is proposing a 100% payment to all unsecured creditors within 24 months from Confirmation Date. The Debtor contends that all creditors will not receive less than the amount such claim holder would receive or retain if the debtor were liquidated under Chapter 7.

For the purpose of determining a liquidation value, the market value as of Petition Date has been adjusted using the experience of liquidation of assets under bankruptcy cases.

Under Debtor's Plan of Reorganization, creditors will receive payment of the allowed claims on the terms noted in the Payment Plan Schedule.

**ARTICLE V**
**SUMMARY OF THE PLAN**
**CLASSIFICATION AND TREATMENT OF CLAIMS**

**A.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The Plan has been drafted designating 12 classes in accordance with the provisions of 11 U.S.C. §1122 and §1123. All creditors and other parties in interest are urged to read and consider the Plan in full inasmuch as it represents a proposed legally binding agreement with the Debtor and any other party involved. The classes of creditors are as follows:

**CLASS 1    ADMINISTRATIVE CLAIMS**

This class shall consist of all allowed administrative expense priority claims, as provided under Section 503 (a)(2) of the Code, including, but not limited to, court costs accrued since the petition date, fees to the United States Trustee, fees and expenses of Debtor's counsel, accountant and any other professionals retained by the Debtor, as may be allowed by the Bankruptcy Court upon application thereafter, and after notice and a hearing, in accordance with the Bankruptcy Code and Rules, as well as any unpaid taxes or fees accrued since

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

Petition Date. Debt under this class is estimated to be approximately in the amount of $50,000 in addition to the retainer received by professionals.

**CLASS 2     CRIM – PROPERTY TAXES**

**2A.**  This class shall consist of CRIM's secured claims which is listed in Debtor's schedules as "unliquidated" and "contingent" in the amount of $54,518.79 for property taxes accrued over Lot No. 74. Pursuant to Proof of Claim No. 1 filed by CRIM, this governmental entity claimed the exact same amount of $54,518.79.

**2B.**  This class shall consist of CRIM's secured claims which is listed in Debtor's schedules in the amount of $140,802.46 for property taxes accrued over Lot No. 75. According to Proof of Claim No. 1 filed by CRIM, this entity claimed the same amount that was listed in Debtor's schedules: $140,802.46.

**CLASS 3     PR DEPARTMENT OF TREASURY – PROPERTY TAXES**

**3A.**  This class shall consist of the Department of Treasury's secured claim in the amount of $24,698.62 for property taxes accrued pursuant to PR Act No. 7 over Lot No. 74

**3B.**  This class shall consist of the Department of Treasury's secured claim in the amount of $34,867.08 for property taxes accrued pursuant to PR Act No. 7 over Lot No. 75.

**CLASS 4     BANK & TRUST / EUROBANK / ORIENTAL / ALD ACQUISITION, LLC – FIRST LIEN; LOT 74**

This class shall consist of ALD's allowed claim secured with a first rank lien in the amount of $4,380,000 over Lot No. 74. The principal amount owed under

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

this Note is $3,955,000. Pursuant to Proof of Claim No. 6 filed by ALD, this creditor seeks a secured payment in the amount of $12,646,000 for all liens over Lot 74 including principal, interests and other charges.

**CLASS 5**   **BANK & TRUST / EUROBANK / ORIENTAL / ALD ACQUISITION, LLC – SECOND LIEN; LOT 74**

This class shall consist of ALD's allowed claim secured with a second rank note in the amount of $3,250,000 over Lot No. 74. The principal amount owed under this Note is $4,716,997.49. Pursuant to Proof of Claim No. 6 filed by ALD, this creditor seeks a secured payment in the amount of $12,646,000 for all liens over Lot 74 including principal, interests and other charges.

**CLASS 6**   **RG PREMIER BANK / SCOTIABANK / ALD ACQUISITION, LLC. – FIRST LIEN: LOT 75**

This class shall consist of ALD's allowed claim secured with three (3) first rank notes "in pari passu" in the amount of $2,900,000, over Lot No. 75. Pursuant to Proof of Claim No. 5 filed by ALD, this creditor seeks a secured payment in the amount of $3,846,110.99 including principal, interests and other charges.

**CLASS 7**   **RG PREMIER BANK / SCOTIABANK / ALD ACQUISITION, LLC. – SECOND LIEN: LOT 75**

This class shall consist of ALD's allowed claim secured with a second rank note in the amount of $1,100,000, over Lot No. 75. Pursuant to Proof of Claim No. 4 filed by ALD, this creditor seeks a secured payment in the amount of $1,491,842.67 including principal, interests and other charges.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

**CLASS 8**   **ECONOMIC DEVELOPMENT BANK OF PR / ALD ACQUISITION, LLC. – THIRD LIEN: LOT NO. 75**

This class shall consist of ALD's allowed claim secured with a third rank note in the amount of $900,000, over Lot No. 75.  Pursuant to Proof of Claim No. 3 filed by ALD, this creditor seeks a secured payment in the amount of $879,268.66 including principal, interests and other charges.

**CLASS 9**   **PRIORITY CLAIM –MUNICIPALITY OF SAN JUAN**

Pursuant to Proof of Claim No. 2 filed by the Municipality of San Juan, this entity claims the amount of $4,680.00 as priority.

**CLASS 10**   **GENERAL UNSECURED CLAIMS – GOVERNMENTAL UNITS**

This class shall consist of the unsecured portion of the allowed claims of impositive nature, owed by the Debtor to governmental units.  The amounts included under this class will include those unsecured claims listed in Debtor's Schedules and the unsecured portion of the Proof of Claims filed by a governmental entity.

**CLASS 11**   **OTHER GENERAL UNSECURED CLAIMS**

This class shall consist of general unsecured claims of the Debtor including the general unsecured creditors listed in Debtor's Schedules, those who filed a proof of claim, as well as the unsecured portion of the secured creditors, based on loan agreements and consensual obligations.

**CLASS 12**   **EQUITY SECURITY AND/OR OTHER INTEREST HOLDERS**

This class includes all equity and interest holders who are the owners of the stock of the Debtor.  This class will not receive distribution under the Plan until all senior classes are paid in full.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

## B. TREATMENT TO CLASSES

**CLASS 1     ADMINISTRATIVE CLAIMS**

This class shall consist of all allowed administrative expense priority claims, as provided under Section 503 (a)(2) of the Code, including, but not limited to, court costs accrued since the petition date, fees to the United States Trustee, fees and expenses of Debtor's counsel, accountant and any other professionals retained by the Debtor, as may be allowed by the Bankruptcy Court upon application thereafter, and after notice and a hearing, in accordance with the Bankruptcy Code and Rules, as well as any unpaid taxes or fees accrued since Petition Date. Debt under this class is estimated to be approximately in the amount of $50,000 in addition to the retainer received by professionals.

This class will be paid in full or as agreed with such creditors on Effective Date. This class is not impaired.

**CLASS 2     CRIM – PROPERTY TAXES**

**2A.** This class shall consist of CRIM's secured claims which is listed in Debtor's schedules as "unliquidated" and "contingent" in the amount of $54,518.79 for property taxes accrued over Lot No. 74. Pursuant to Proof of Claim No. 1 filed by CRIM, this governmental entity claimed the exact same amount of $54,518.79.

The allowed claim under this class will be paid in full within 90 days from Effective Date. This class is impaired.

**2B.** This class shall consist of CRIM's secured claims which is listed in Debtor's schedules in the amount of $140,802.46 for property taxes accrued over Lot No. 75. According to Proof of Claim No. 1 filed by

*In re: Las Américas 74-75, Inc. -- Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

CRIM, this entity claimed the same amount that was listed in Debtor's schedules: $140,802.46.

The allowed claim under this class will be paid in full within 90 days from Effective Date. This class is impaired.

**CLASS 3**     **PR DEPARTMENT OF TREASURY – PROPERTY TAXES**

**3A.**    This class shall consist of the Department of Treasury's secured claim in the amount of $24,698.62 for property taxes accrued pursuant to PR Act No. 7 over Lot No. 74. This class will be paid in full its allowed claim within 90 days from Effective Date. This class is impaired.

**3B.**    This class shall consist of the Department of Treasury's secured claim in the amount of $34,867.08 for property taxes accrued pursuant to PR Act No. 7 over Lot No. 75. This class will be paid in full its allowed claim within 90 days from Effective Date. This class is impaired.

**CLASS 4**     **BANK & TRUST / EUROBANK / ORIENTAL / ALD ACQUISITION, LLC – FIRST LIEN; LOT 74**

This class shall consist of ALD's allowed claim secured with a first rank lien in the amount of $4,380,000 over Lot No. 74. The principal amount owed under this Note is $3,955,000. Pursuant to Proof of Claim No. 6 filed by ALD, this creditor seeks a secured payment in the amount of $12,646,000 for all liens over Lot 74 including principal, interests and other charges.

This class will be paid in full its allowed secured claim within 90 days from Effective Date. This class is impaired.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

**CLASS 5**    **BANK & TRUST / EUROBANK / ORIENTAL / ALD ACQUISITION, LLC – SECOND LIEN: LOT 74**

This class shall consist of ALD's allowed claim secured with a second rank note in the amount of $3,250,000 over Lot No. 74. The principal amount owed under this Note is $4,716,997.49. Pursuant to Proof of Claim No. 6 filed by ALD, this creditor seeks a secured payment in the amount of $12,646,000 for all liens over Lot 74 including principal, interests and other charges.

This class will be paid in full its allowed secured claim within 90 days from Effective Date. This class is impaired.

**CLASS 6**    **RG PREMIER BANK / SCOTIABANK / ALD ACQUISITION, LLC. – FIRST LIEN: LOT 75**

This class shall consist of ALD's allowed claim secured with three (3) first rank notes "in pari passu" in the amount of $2,900,000, over Lot No. 75. Pursuant to Proof of Claim No. 5 filed by ALD, this creditor seeks a secured payment in the amount of $3,846,111, including principal, interests and other charges.

This class will be paid in full its allowed secured claim within 90 days from Effective Date. This class is impaired.

**CLASS 7**    **RG PREMIER BANK / SCOTIABANK / ALD ACQUISITION, LLC. – SECOND LIEN: LOT 75**

This class shall consist of ALD's allowed claim secured with a second rank note in the amount of $1,100,000, over Lot No. 75. Pursuant to Proof of Claim No. 4 filed by ALD, this creditor seeks a secured payment in the amount of $1,491,842.67 including principal, interests and other charges.

*In re: Las Américas 74-75, Inc. -- Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

This class will be paid in full its allowed secured claim within 90 days from Effective Date.  This class is impaired.

**CLASS 8**      **ECONOMIC DEVELOPMENT BANK OF PR / ALD ACQUISITION, LLC. – THIRD LIEN: LOT NO. 75**

This class shall consist of ALD's allowed claim secured with a third rank note in the amount of $900,000, over Lot No. 75.  Pursuant to Proof of Claim No. 3 filed by ALD, this creditor seeks a secured payment in the amount of $879,268.66 including principal, interests and other charges.

This class will be paid in full its allowed secured claim within 90 days from Effective Date.  This class is impaired.

**CLASS 9**      **PRIORITY CLAIM –MUNICIPALITY OF SAN JUAN**

Pursuant to Proof of Claim No. 2 filed by the Municipality of San Juan, this entity claims the amount of $4,680.00 as priority.

This class will be paid in full its allowed claim within 24 months from Effective Date.  This class is impaired.

**CLASS 10**      **GENERAL UNSECURED CLAIMS – GOVERNMENTAL UNITS**

This class shall consist of the unsecured portion of the allowed claims of impositive nature, owed by the Debtor to governmental units.  The amounts included under this class will include those unsecured claims listed in Debtor's Schedules and the unsecured portion of the Proof of Claims filed by a governmental entity. This class will be paid in full its allowed claim within 24 months from Effective Date.  This class is impaired.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

**CLASS 11     OTHER GENERAL UNSECURED CLAIMS**

This class shall consist of general unsecured claims of the Debtor including the general unsecured creditors listed in Debtor's Schedules, those who filed a proof of claim, as well as the unsecured portion of the secured creditors based on loan agreements and consensual obligations. This class will be paid in full its allowed claim within 24 months from Effective Date.  This class is impaired.

**CLASS 12     EQUITY SECURITY AND/OR OTHER INTEREST HOLDERS**

This class includes all equity and interest holders who are the owners of the stock of the Debtor.  This class will not receive distribution under the Plan until all senior classes are paid in full.

*(All creditors are requested to review Exhibit No. 13, which provides for the payments under the Plan with the corresponding assumptions.)*

**ARTICLE VI**
**IMPAIRMENT OF EXISTING CLAIMS AND INTERESTS**

As provided by 11 U.S. C. §1124, a class of claims of interests is impaired under a plan unless with respect to each claim of interest of such a class, the Plan:

1)  leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

2)  notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default.

    a.  cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

   b.  reinstates the maturity of such claim or interest as such maturity existed before such default;

   c.  compensated the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

   d.  does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## ARTICLE VII
## PAYMENT TO PRIORITIES UNDER SECTION 507(a)(8) OF THE CODE

All unsecured priority governmental claims pursuant to Section 507(a)(8) of the Code, as the same are allowed, and any priority portion of any debt to all of the governmental units as they are approved and ordered to be paid by the Court, will receive payment in full of their allowed claim and/or the agreed amount plus prevailing prime rate interest over a period ending no later than five (5) years after the date of the order for relief or as agreed by the parties.

## ARTICLE VIII
## LEASES AND EXECUTORY CONTRACTS

The executory contract to which the Debtor is a party is listed in Schedule G, which is the Lease Agreement with El Piex Puertorriqueño, Inc.  On or before confirmation date, the Debtor will assume or reject this executory contract.

8.1 Assumption of Designated Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123 (b)(2) and 365 (a) of the Bankruptcy Code, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption, as of the Effective Date, of each executory contract or unexpired lease to which the Debtor is a party including but not limited to those for which a motion to assume is pending at the time of the

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

Confirmation Date. Unless otherwise provided in a pending motion to assume, on the Effective Date or as promptly as possible thereafter, the Debtor shall cure any defaults under such assumed executory contracts or unexpired leases to the extent required by Section 365 of the Bankruptcy Code. In addition, to the extent the Debtor has rights of setoff against any of the parties to these leases and contracts, the Debtor reserves the right to cure any defaults under such leases and contracts by exercising this right of setoff.

8.2 Rejection of Executory Contracts and Unexpired Leases.

Pursuant to Sections 1123 (b)(2) and 365 (a) of the Bankruptcy Code, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection, as of the Effective Date, of each executory contract and/or unexpired lease to which the Debtor has not filed a motion to assume.

8.3 Executory Contracts and Unexpired Leases Which Were Assumed or Rejected to Date. Any executory contract or unexpired lease (other than insurance policies) which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated in the Disclosure Statement, listing an executory contract or unexpired lease to be assumed at the time of confirmation of this Plan, shall be deemed rejected and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

8.4 Rejection Damage Claims. If the rejection of an executory contract or unexpired lease by the Debtor results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not hereto evidenced by a filed proof of claim, shall

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

be forever barred and shall not be enforceable against the Debtor's Estate, or its respective properties or agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the earlier of, 30 days after the entry of the Order approving the rejection of the contract or unexpired lease, if such rejection is granted before Confirmation Date, or 30 days after Confirmation Date if the Confirmation Order constitutes approval of the rejection. Unless otherwise ordered by the Court or provided in the Plan, all such Allowed Claims for which proofs of claim are timely filed will be treated as Class 6 subject to the provisions of the Plan and to Section 502(b)(6) of the Bankruptcy Code, to the extent applicable. The Debtor shall have the right to object to any such rejection damage claims filed in accordance with this Section.

   8.5 <u>Post-Petition Agreements Unaffected By Plan</u>.

   Except as otherwise provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtor after the Petition Date that were otherwise valid, effective and enforceable against the Debtor as of the Confirmation Date.

## ARTICLE IX
## PROOF OF CLAIMS NOT FILED

   The Plan provides that where a proof of claim has not been filed, the Allowed Claim shall be in the amount appearing in the Schedules filed by the Debtor, <u>provided however</u>, that the scheduled amount is not shown as "unliquidated", "contingent" or "disputed", in which case no amount will be allowed unless the Debtor has notified such creditors and such creditors have filed a timely proof of claim.  To the extent that no debt was listed on Debtor's Schedules and the creditor was listed for notice purposes only and such creditor did not file a proof of claim, no payment will be provided.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

## ARTICLE X
## OBJECTIONS TO CLAIMS

The Debtor, at the option of the Debtor or upon order of the Bankruptcy Court, if requested, may file an objection to any claim as to its validity or amount within 30 days prior or after the Confirmation hearing.  If an objection is made, payment to such claimants will be made only after the entry of a final order by the Court allowing such claim (the allowed amount) and in accordance with the provisions of the Plan governing the class to which such claim belongs.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONSUMMATION

Before the consummation of the Plan takes place, the Confirmation Order should be a final order. Once the Plan is confirmed by a final order, the provisions of the Plan will be the new contract between the parties, even in case of default thereafter. In the event that the conditions stated in the Plan are not satisfied, this Plan shall be null and void and the rights of all holders of claims and interests, and of the Debtor, shall be restored as of the date immediately preceding the Confirmation Date.

## ARTICLE XII
## NON-ACCEPTANCE OF THE PLAN
## (CRAMDOWN)

If all applicable requirements of 11 U.S.C. §1129(a), other than subsection (a)(8), are met with respect to the Plan, the Debtor hereby requests that the Court confirms this Plan, notwithstanding the requirements of said section, if the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted this Plan.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

### ARTICLE XIII
### MEANS OF EXECUTION OF THE PLAN
### AND MANAGEMENT OF DEBTOR

On the Effective Date of the Plan, the distribution, administration and management of Debtor's affairs, collection of moneys, and distribution to creditors, unless otherwise provided herein, will be under the control and supervision of the current officers, who will assume the same roles they have assumed throughout this reorganization process. They will not receive any compensation, nor receive any distribution under the Plan until all other senior classes are paid in full.

Funding of the plan will come from existing funds in Debtor's accounts, the rents received, the funds consigned in the PR State Court, under case No. KCD 10-3910, which the Debtor estimates will be able to withdraw within 90 days after the effective date of the Plan. The Debtor expects to have ALD's claim amount determined (the allowed amount) prior to such date, in order for ALD to collect its allowed secured claims in full within 90 days from the Effective Date of the Plan. The Debtor proposes to sell or refinance the Lot No. 75 within two years from effective date. With such funds the Debtor will pay all other claims. Debtor expects to pay the allowed unsecured portions in full from the proceeds of this property. In any event payment to all unsecured creditors will be higher than that of liquidation value.

### ARTICLE XIV
### PROVISIONS FOR THE MODIFICATION
### OF THE PLAN

The Debtor may propose amendments or modification of the Plan at any time prior to its confirmation, upon notice to creditors and parties in interest. After confirmation of the Plan, the Debtor may, with the approval of the Court and as long as it does not adversely affect the interests of the creditors, remedy any defect or omission, in such manners as may be necessary to carry out the purposes and effects of the same. If by any chance the Plan of Reorganization

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

is to be amended, the creditors shall have a reasonable opportunity to review it with enough time prior to any hearing on confirmation.

## ARTICLE XV
## CLOSING THE CASE

At such time as the case has been substantially consummated, this case shall be closed. In order for the case to be closed, the Debtor shall file an application for final decree showing that the case has been fully administered and the Plan has been substantially consummated. The Court shall conduct a hearing upon application thereon and after notice to all creditors and parties in interest. Thereafter, an order approving the Debtor's report and closing of the case shall be entered.

## ARTICLE XVI
## RELEASE AND DISCHARGE OF CLAIMS

16.1 - Discharge. Except as otherwise expressly provided in the Plan or in Section 1141(d) of the Code, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan of Reorganization are in full and final satisfaction, settlement, release and discharge as against the Debtors of any debt of the Debtors that arose before the Effective Date, and any debt of the Debtors of a kind specified in Section 502(g), 502(h), or 502 (i) of the code, and all claims against the Debtors or its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, other than the interest proposed in Debtor's plan, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Code, (ii) such Claim is Allowed under Section 502 of the Code, or (iii) the holder of such Claim has accepted the Plan.

16.2 - Injunction Relating to the Plan. As of the Effective Date, all persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor and its Estate while payments under the Plan are pending, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan or under any specific order entered by the Bankruptcy Court.

16.3 - Setoffs. Except as otherwise provided in this Plan, nothing contained in this Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any person.

16.4 - Transfer of Properties under the Plan. The sale and/or transfer of any real or personal property to be made under Debtor's Plan of Reorganization may not be taxed under any law imposing a stamp tax or similar tax, under the provisions of 11 U.S.C. §1146.

### ARTICLE XVII
### OTHER PROVISIONS

Confirmation of the Plan and the Confirmation Order will vest title of all property of the Estate in Debtor and will constitute final settlement of payment to all creditors. All injunctions or stays provided for in the bankruptcy case at bar under Sections 105 and 362 of the Bankruptcy Code (11 U.S.C.), or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

The provisions of this Plan shall bind all claims against the Debtor of whatever nature, including any claim arising from the rejection of any executory contract, or any other action. Any holder of a claim or interest who fails to file an objection in writing to the provisions of the Plan, which is filed with the Court and served upon counsel for the Debtor, not later than the date set for the confirmation of the plan, shall be deemed to have accepted its classification and to be bound by the proposed Plan.

*In re: Las Américas 74-75, Inc. – Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

All actions taken by the Debtor with respect to any person shall not be construed to release, waive, discharge, compromise or in any other way satisfy any claim, except those subject to any agreement between the parties. Upon completion of the requirements of the Plan and the order of confirmation, the Debtor and/or the claimant shall execute all corresponding documents and cooperate fully to reflect, release and/or reaffirm all the obligations herein provided.

There are possible risks under the proposed Plan of Reorganization, considering that the sale of real estate in Puerto Rico has been slow, nevertheless Debtor's property is attractive to selective clientele. The slow moving real estate industry may not enable the Debtor to sell the property within the time expected.

To the extent that any term of this Disclosure Statement varies from the terms of the Plan, the terms of the Plan shall govern.

## ARTICLE XVIII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over this case as is conferred upon it by law, rule or statute, or by the Plan, to enable the Debtor to substantially consummate any and all proceedings which it may bring or after the entry of the order of confirmation, in order to carry out the provisions of the Plan and or any related matter.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of July, 2015.


Omar Guzmán, Vice Pres.

36

*In re: Las Américas 74-75, Inc. -- Case No. 15-01527(EAG)*
*Debtor's Disclosure Statement & Summary of Proposed Plan of Reorganization*

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will send notification of such filing to the

parties appearing in said system including the US Trustee and by the United States Postal

Service to all those parties who have requested a copy and are not within the electronic

notification service.

**C. CONDE & ASSOC.**
Attorney for the Debtor
San José Street #254, 5th Floor
San Juan, P.R. 00901-1253
Tel: (787) 729-2900
Fax: (787) 729-2203
E-mail: condecarmen@microjuris.com
*/S/ Carmen D. Conde Torres*
Carmen D. Conde Torres
USDC No.: 207312